**Herman W. CARTY**

v.

**Paul N. CARLIN, et al.**

**Civ. A. No. N–84–4565.**

United States District Court,
D. Maryland.

Dec. 18, 1985.

Stuart J. Snyder, Baltimore, Md., for plaintiff.

Peter Ward, Asst. U.S. Atty., D.Md., Baltimore, Md., and Charles F. Kappler, Asst. Regional Labor Counsel, U.S. Postal Service, for defendant.

## MEMORANDUM

NORTHROP, Senior District Judge.

On December 19, 1984, the plaintiff Herman W. Carty filed the instant action against William F. Bolger (then Postmaster General of the United States) pursuant to the Rehabilitation Act, 29 U.S.C. § 791, alleging that he was discharged from his position at the Baltimore, Maryland, United States Postal Service because of a physical and mental handicap. On November 5, 1985, the defendant Postmaster General (now Paul N. Carlin) moved to dismiss the complaint, or in the alternative, for summary judgment. Fed.R.Civ.P. 12(b)(6) and 56. The plaintiff filed a motion to oppose dismissal or summary judgment on December 2, 1985. On December 11, 1985, the defendant replied to the plaintiff's opposition to dismiss or in the alternative for summary judgment.

After reviewing the memoranda and records in this case, the Court concludes that no hearing is necessary for decision in this matter. Local Rule 6. For the reasons set forth, the defendant's motion is GRANTED.

## FACTS

The plaintiff first became employed by the Postal Service in 1966, as a part-time mail collector. In that same year he was stricken with a heart attack, was hospitalized, and as a result of his heart condition, was transferred to the special delivery unit of the Baltimore office of the Postal Service where he served as a messenger. Then, in April, 1979, Mr. Carty requested and was granted a transfer to the position of laborer custodian. In December, 1979, the plaintiff was hospitalized because he was suffering from severe depression.

On January 21, 1980, the plaintiff's treating physicians recommended to the Postal Service, that the plaintiff not return to his custodial duties because the work had a demoralizing influence upon him. They recommended that he should be assigned clerical work.

On January 30, 1980, Dr. Weckesser, another treating physician of the plaintiff's, issued a statement indicating that the plaintiff was suffering from chest pain of musculo-skeletal origin, esophageal hiatus hernia, and anxiety. On February 7, 1980, Dr. Georgina Y. Goodwin, medical officer of the United States Postal Service's Baltimore, Maryland, office, issued a medical statement addressed to the Director of Employee and Labor Relations stating that after reviewing the plaintiff's medical file and medical report, she concluded that the plaintiff was not able to perform his full duties as a laborer/custodian or any other position for which he may have been qualified. The plaintiff was then discharged from the Postal Service in February, 1980.

On March 20, 1980, the plaintiff filed a complaint with the Postal Service alleging, *inter alia,* discrimination because of his physical and/or mental handicap in that he had not been reassigned as required since his condition was caused by a job related injury, and that he had been discharged as a result of his physical and/or mental inability to perform the duties of a laborer/custodian, when he could in fact perform another job in the U.S. Postal Service in light of his physical and/or mental handi-

cap. A formal investigation took place and a report was issued on October 22, 1980. The United States Postal Service then ruled on February 2, 1981, that no discrimination had occurred. A hearing was then conducted on May 7, 1981, at the plaintiff's request before an EEOC attorney-examiner. The hearing examiner issued his findings in August, 1981, concluding that the plaintiff was physically and/or mentally handicapped on February 7, 1980 due to a previous heart attack, nervous breakdown, and hernia; he further found that the United States Postal Service had not afforded the plaintiff a reasonable accommodation in violation of 29 C.F.R. § 1613.701. The hearing examiner recommended that the plaintiff be reinstated to the position of distribution clerk or any other position which he was able to perform in light of his physical and mental handicap. The hearing examiner further recommended that the plaintiff be given back wages from February 7, 1980 to the date of reinstatement.

After receiving the recommendation from the hearing examiner, the agency chose not to adopt the recommended findings of the hearing examiner, and issued its final decision, concluding that there had been no discrimination. The agency refused to reinstate the plaintiff and award the recommended back wages.

The plaintiff then filed an appeal to the Equal Employment Opportunity Commission, Office of Review and Appeals. On October 31, 1984, the Office of Review and Appeals issued a decision rejecting the recommended decision of its own hearing examiner and affirming the Postal Service's final decision, which found no discrimination based on a physical or mental handicap or age.

After properly exhausting his administrative procedures under 5 U.S.C. § 7153, the plaintiff then filed this action pursuant to 29 U.S.C. § 791.

## ANALYSIS

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judg-

ment shall issue only when the pleadings before the Court establish "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A government employee's right to a trial *de novo* in a discrimination suit does not necessarily preclude the granting of summary judgment. *Jones v. U.S. Postal Service,* 78 F.R.D. 196 (E.D.Mich.1978). The movant bears the burden "to demonstrate clearly that there is no genuine issue of fact, and any doubt as to the existence of such an issue is resolved against him." *Phoenix Savings and Loan, Inc. v. Aetna Casualty & Surety Co.,* 381 F.2d 245 (4th Cir.1967); *accord, Cole v. Cole,* 633 F.2d 1083 (4th Cir.1980); 10A C. Wright and A. Miller & Kane Federal Practice and Procedure § 2727 (1983).

With these principles in mind, the Court turns to the merits of the pending motion. The essence of the defendant's argument is three fold. First, that the undisputed facts clearly indicate that, as a matter of law, the plaintiff is not a handicapped person under the terms of the Rehabilitation Act. Secondly, the defendant argues that the Postal Service had no duty to accommodate the plaintiff because he could no longer perform his duties as a laborer/custodian under any circumstances. Third, the Postal Service contends that the Rehabilitation Act does not require the Postal Service to reassign a handicapped worker as a reasonable accommodation. For purposes of clarity, each of the foregoing arguments will be addressed individually.

I. Is the plaintiff a handicapped person who is entitled to protection under the Rehabilitation Act?

■ Not all persons with disabilities are entitled to protection under the Rehabilitation Act. In order to assert a claim that one has been discriminated against because of a physical or mental handicap, he must satisfy the threshhold requirement that he is a handicapped person as defined by the statute. *Jasany v. United States Postal Service,* 755 F.2d 1244, 1248 (6th Cir.1985). The statute defines a handicapped person as one who "has a physical and/or mental

impairment which substantially limits one or more of such person's major life activities." 29 U.S.C. § 706(7)(B)(i). Major life activities is defined in 29 C.F.R. § 1613.-702(c) as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." There are thus two key elements to consider when determining whether one is handicapped according to the provisions of the Rehabilitation Act.

1. The person must have a physical and/or mental impairment; and

2. That impairment must substantially limit one or more of such person's major life activities.

It is undisputed by both parties, that Mr. Carty has a physical and mental impairment. The medical record indicates that he has a long line of medical and psychiatric treatment. There is evidence by the plaintiff's doctor that he cannot withstand prolonged heavy lifting without aggravating his existing hiatal hernia. The plaintiff's doctors have further indicated that the plaintiff suffers from manic depression, myocardial infraction with probable coronary artery disease.

The defendant argues that while the plaintiff has alleged that he suffers from physical and mental impairments, he has not presented a case alleging that the impairments substantially limited one or more of the plaintiff's major life activities. The defendants contend that since the plaintiff has alleged that his impairment does not preclude him from performing other jobs within the postal service, and that since he has not alleged that his impairments have restricted him ability to find work elsewhere, he has failed to allege that he was substantially limited by his impairment. The defendant relies on the case of *Jasany v. U.S. Postal Service, supra,* as its basis.

In *Jasany,* the plaintiff suffered from an eye condition (strabismus), commonly known as crossed eyes. Despite his condition, he was hired by the Postal Service as a distribution clerk machine trainee. His primary task in this position was to operate a mail sorting machine. After operating

the mail sorting machine for three months, he began to develop eye strain, headaches, and excessive tearing. Doctors' reports indicated that his symptoms were due to the detailed visual work required to operate the machine coupled with his problems of strabismus. The Court of Appeals for the 6th Circuit held that he was not a "qualified handicapped person" within the meaning of the statute.

In the instant case, the parties stipulated that Jasany's condition had never had any effect whatsoever on any of his activities, including his past work listing and ability to carry out other duties at the post office apart from operation of the [mail sorting machine]. Based upon this stipulation and in light of our analysis of the statutory definition, we find that ... the appellant failed to establish a prima facie case of handicap discrimination. (at 1250).

In conclusion, the court in *Jasany* found that exclusion coupled with physical impairment from one particular job is not sufficient for a plaintiff to establish that the impairment substantially limits one or more of a person's major life activities.

While the Court agrees with the ruling in *Jasany*, the facts of the present case are somewhat distinguishable. In the present case, the plaintiff has shown that he suffers from a variety of impairments ranging from heart condition to severe depression. Although the plaintiff has stated that he can no longer perform the duties of a laborer/custodian, he has not suggested that his impairments only limit his ability to perform this one job.

In attempting to determine whether an impairment is so severe as to be considered substantially limiting employment potential, a number of factors need to be considered—the number and type of jobs from which the impaired individual is disqualified, the geographical area to which the individual has reasonable access, and the individual's job expectations and training. *E.E. Black. Ltd. v. Marshall*, 497 F.Supp. 1088, 1100–01 (D.Hawaii 1980).

The plaintiff's complaint indicates that because of his state of severe depression, he could no longer perform as a laborer/custodian because the work had a demoralizing influence on him. He has also indicated that his physical impairments prevent him from doing tasks which entail prolonged heavy lifting. Although it is true that the plaintiff has stated that his impairments do not prohibit him from performing the job of a distribution clerk, he has not indicated that his then present position of a laborer/custodian is the only one he is incapable of performing.

This fact is to be distinguished from *Jasany*. In that case, the parties stipulated that Jasany's condition had never had any affect whatsoever on any of his activities, including his past work history and ability to carry out other duties apart from operation of the mail sorting machine. *Id.* at 1250.

The record in this case, however, does not disclose any such stipulation nor does the record clearly indicate that the parties are in agreement about the nature and severity of the plaintiff's condition.

■■■ Therefore, the Court cannot state, after examining the record in this case in a light most favorable to the plaintiff, that he does not meet the definition of a handicapped person under the law.

## II. Is the plaintiff a "qualified handicapped person" as defined by the Act?

The defendant next suggests that even if the plaintiff were deemed to be handicapped, the Code of Federal Regulations reveals that under the facts of this case, the Rehabilitation Act offers him no remedy.

In analyzing claims brought by handicapped federal employees under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, the courts have identified four distinct types of discriminatory barriers confronting handicapped persons seeking employment: (1) intentional discrimination for reasons of social bias against handicapped individuals; (2) neutral standards with dis-

parate impact; (3) surmountable impairment barriers; and (4) insurmountable impairment barriers. *Prewitt v. U.S. Postal Service,* 662 F.2d 292, 305 n. 19 (5th Cir. 1981); *Bey Bolger,* 540 F.Supp. 910, 925 (E.D.Pa.1982).

■ The duty of the employer to accommodate the handicapped worker attaches only when the employee asserts or claims that he was discharged or rejected for a position despite the fact that he would have performed the essentials of the job if afforded reasonable accommodation. *Prewitt v. U.S. Postal Service,* 662 F.2d at 305.

Section 1613.702(f) of the Equal Employment Opportunity Commission regulations defines a qualified handicapped person as follows:

A qualified handicapped person means with respect to employment, a handicapped person who, with or without reasonable accommodation, can perform *the essential functions of the position in question* without endangering the health of the individual or others. (Emphasis added).

The defendant claims that he had no duty to accommodate the plaintiff because the duty to accommodate only occurs when the plaintiff would be able to perform his duties given such accommodation.

The extent of an employer's duty as an employing federal agency to handicapped persons is set forth in the Code of Federal Regulations, 29 C.F.R. § 1613.701 *et seq.* In pertinent part, those regulations state:

Agencies shall give full consideration to the hiring, placement, and advancement of qualified mentally and physically handicapped persons. The Federal Government shall become a model employer of handicapped individuals. An agency shall not discriminate against a *qualified physically* or *mentally* handicapped person. (Emphasis added).

Given the facts of this case, it becomes clear that before the plaintiff can assert a charge of discrimination against the agency, he must first allege that he was otherwise qualified to perform the job for which he was discharged.

In *Pushkin v. Regents and University of Colorado,* 658 F.2d 1372 (10th Cir.1981), the court citing the Supreme Court's reasoning in *Southeastern Community College v. Davis,* 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980, stated that:

Under *Davis* the first test applied is whether the individual in question is qualified for the position in spite of his handicap. If the plaintiff's handicap would preclude him from doing the job in question, the plaintiff could not be found to be otherwise qualified.

*Pushkin* at 1387.

Once a person is deemed a qualified handicapped person, then the agency must attempt to reasonably accommodate that person according to the methods outlined in 29 C.F.R. § 1613.704:

(a) An agency shall make reasonable accommodation to the known physical or mental limitations of a qualified handicapped applicant or employee unless the agency can demonstrate that the accommodation would impose an undue hardship on the operation of its program.

(b) Reasonable accommodation may include, but shall not be limited to: (1) making facilities readily accessible to and usable by handicapped persons; and (2) job restructuring, part-time or modified work schedules acquisition or modification of equipment or devices, appropriate adjustment or modification of examinations, the provision of readers and interpreters, and other similar actions.

(c) In determining pursuant to paragraph (a) of this section whether an accommodation would impose an undue hardship on the operation of the agency in question, factors to be considered include: (1) the overall size of the budget; (2) the type of agency operation, including the composition and structure of the agency's work force; and (3) the nature and the cost of the accommodation.

In the instant case, the plaintiff has simply stated in his complaint that the defendant has "refused to assign him to light

duty or to a job whose duties plaintiff could perform in light of his disabilities...." The complaint, on its surface, therefore, is unclear as to whether the plaintiff is alleging that the defendant had refused to attempt to modify his then present job in such way as to avoid heavy labor and a demoralizing effect, or whether the plaintiff was demanding transfer to a new job as his sole remedy.

The paramount issue then to be decided is whether the plaintiff could have successfully continued in his position as a laborer/custodian, given accommodations. After reviewing the entire record in this case, the Court concludes that the plaintiff, because of his impairment could no longer perform duties as a laborer/custodian under any circumstances.

Federal Rule of Civil Procedure 56(c) states in pertinent part: "[Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions of fact, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

In determining whether there is a genuine issue as to any material fact, the Court may consider a variety of materials.

The formal issues framed by the pleadings are not controlling on a motion for summary judgment; the Court must consider the issues presented by other material offered by the parties on the motion to determine whether the Rule 56 request should be granted. Thus, the Court will examine the pleadings to ascertain what issues they present and then consider the affidavits, depositions, admissions, answers to interrogatories and similar material to determine whether any of the post-pleading material suggests the existence of any other triable genuiness issues of material fact.... Given this process the Court is obliged to take account of the entire setting of the

case as a Rule 56 motion. In addition to the pleadings, it will consider all papers of record, as well as any material prepared for the motion that merits the standard prescribed in Rule 56(e). 10A *Wright, Miller & Kane*, Federal Practice and Procedure, Civil 2d § 2721 (1983). After considering the entire record in this case, including the pleadings, memoranda, and pretrial statement[1] in this case, the Court concludes that the basis of the plaintiff's complaint is that his physical and mental disabilities rendered him incapable of performing his duties as a laborer/custodian and that he should have been reassigned to another position as an accommodation. The reasons for the Court's conclusion are set forth in the plaintiff's complaint, plaintiff's memorandum in opposition to summary judgment and plaintiff's proposed pretrial order:

1. Dr. Katze, plaintiff's psychiatrist, recommended to the defendant that plaintiff not return to custodial duties as this work had a demoralizing influence upon him.

2. Dr. Katze, plaintiff's doctor, recommended that the plaintiff resume clerical duties.

3. Dr. Koller, plaintiff's doctor, recommended that the plaintiff not return to his laborer/custodial duties, but rather be given clerical work.

4. Dr. Weckesser, plaintiff's doctor, saw no obstacle in plaintiff performing the duties of distribution clerk.

5. Dr. Goodwin, defendant's doctor, originally recommended that plaintiff be transferred from the custodial craft to a manual clerk position.

6. Plaintiff will show that he did and could perform the duties of a distribution clerk if the United States Postal Service would provide him with reasonable accommodation by permitting rest at periodic intervals.

7. Plaintiff will show that the defendant never attempted to ascertain ... plain-

---

1. Statements made by a party in a pretrial order are required to be considered in a motion for summary judgment. *Zenith Radio Corp. v. Mat-* *sushita Elec. Indus. Co.,* 494 F.Supp. 1161, 1168 (D.Pa.1980).

tiff's ability to perform other clerical jobs at the defendant's facility.

8. There were no attempts on the part of the defendant to reasonably accommodate [his] handicap even though there have been cases in the past where the defendant has accommodated employees by reclassifying their position or by reassigning them to positions that they could perform in light of their physical and/or mental handicap.

9. Plaintiff will prove that he was physically handicapped due to his hernia, was mentally handicapped due to his manic depressive state and *as a result of his physical handicap could not perform the duties of laborer/custodian. Notwithstanding these conditions, plaintiff could have safely and adequately performed clerical duties with certain reasonable accommodations.* (Emphasis added).

The only statement made by the plaintiff in the entire record indicating that with accommodations, he could have remained in his position as a laborer/custodian, is found in his memorandum in opposition to summary judgment. He states therein:

1. Plaintiff will prove at the trial that defendant had the duty ... to provide him light duty work and/or to restrict his duties that plaintiff was performing as laborer/custodian.

2. Defendant cannot now argue that plaintiff was unable to perform the essential duties of his position if he was never accorded reasonable accommodation by defendant.

The Court therefore concludes, after reviewing the entire record in this case, that the plaintiff does not genuinely dispute the fact that the severity and nature of his impairments rendered him incapable of working as a laborer/custodian. Since any accommodation attempting to permit the plaintiff to continue in that position would have been futile and unacceptable to the plaintiff, the only remaining issue is whether the defendant owed to the plaintiff the obligation to reassign him to another job as a reasonable accommodation.

III. Does the Rehabilitation Act require an employer to reassign a handicapped individual as a reasonable accommodation?

The plaintiff has asserted in his complaint that even if he was unable to perform the job of laborer/custodian under any circumstances due to his mental and physical handicap, he could have performed the duties of a distribution clerk and therefore was entitled to reassignment as a reasonable accommodation.

As noted earlier, 29 C.F.R. § 1613.02(f) requires that a handicapped employee be able to perform the essential functions of "the position in question" in order to be classified as a "qualified handicapped person." Thus, the issue to be addressed is whether the phrase "position in question" is to be limited to the then present position occupied by the plaintiff or whether it may refer to another position within the agency.

Further, as noted earlier, 29 C.F.R. § 1613.704(b) mentions making facilities readily accessible, job restructuring, modifying equipment, and providing interpreters as some types of reasonable accommodations.

The above regulation does not enumerate reassignment as a required accommodation. However, the regulation clearly states that the methods of accommodation indicated are not exhaustive. While there is authority indicating that reassignment is not precluded from possible forms of accommodation, *Jones v. Federal Communication [sic] Commission*, EEOC Decision No. 03820023 (October 21, 1982), there are no cases which hold that reassignment is required. *See Ignacio v. U.S. Postal Service*, 85 Federal Merit Systems Reporter # 7062. Examination of the regulation lends to the ultimate conclusion that the duty to reasonably accommodate only contemplates accommodation of a qualified handicapped employee's present position. It does not include a requirement to reassign or transfer an employee to another position. Preferential reassignment for handicapped employees was not intended by the Rehabilitation Act. The Rehabilita-

tion Act and its accompanying regulations indicate that the law requires reasonable workplace modification or accommodation in order to allow the handicapped person to remain in that position. There is nothing in the law or accompanying regulations to suggest that reasonable accommodation requires an agency to reassign an employee to another position. The Supreme Court has cautioned against infringing the rights of innocent employees when fashioning Title VII remedies. *Ford Motor Co. v. Equal Employment Opportunity Commission,* 458 U.S. 219, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982); *Cf. Yott v. North American Rockwell Corp.,* 602 F.2d 904, 908 (9th Cir.1979), *cert. denied,* 445 U.S. 928, 100 S.Ct. 1316, 63 L.Ed.2d 761 (1980). If the plaintiff were automatically reassigned to another department, this could eliminate his need to compete with other qualified employees. Such a reassignment might also violate other employees' rights secured by the collective bargaining agreement between the Postal Service and the unions.

In conclusion, the Court grants summary judgment to the defendant because the plaintiff was no longer able to continue his work as a laborer/custodian, therefore, he was no longer a "qualified handicapped person" under the law. The duty of an employer to accommodate attaches only when the employee is qualified. Finally, an employer under the Rehabilitation Act is not required to reassign a handicapped person as a reasonable accommodation.