**James WIMBLEY, Plaintiff,**

v.

**William F. BOLGER, Postmaster General, United States Postal Service, Defendant.**

**No. 84–2147–MB.**

United States District Court, W.D. Tennessee, W.D.

June 6, 1986.

Asa Hoke, Memphis, Tenn., for plaintiff.

R. Larry Brown, Asst. U.S. Atty., Wm. H. Brown, Jr., Sr. Asst. Rep. Labor Counsel, Memphis, Tenn., for defendant.

## AMENDED AND NEW FINDINGS AND CONCLUSIONS

## AND ORDER ON MOTIONS FOR NEW TRIAL

McRAE, Chief Judge.

This was a "mixed" case, i.e., on the one hand seeking reversal of a decision previously issued by the Merit Systems Protection Board (MSPB) approving plaintiff's termination as a postal employee and on the other hand alleging that plaintiff was a victim of handicap discrimination. Following the filing of a Motion for Summary Judgment by the defendant, the Court issued an Order on July 19, 1985, indicating that : (1) jurisdiction was proper in this case under 5 U.S.C. § 7703(b)(2), 29 U.S.C. § 794a and 42 U.S.C. § 2000e–16(c); (2) that portion of the case seeking reversal of the MSPB decision should be decided based on the Court's review of the administrative record; and (3) sufficient questions of fact existed on the handicap discrimination issue to require a trial *de novo* of the same.

Following the submission of the briefs by the parties and review of the administrative record, the Court issued an Order on November 5, 1985, affirming the decision of the MSPB.

Thereafter, the handicap discrimination issue was tried non-jury before the Court. On March 10, 1986, after plaintiff had rested his case, counsel for the defendant moved that the Court dismiss the case under Rule 41(b), FRCP, on the ground that under the facts proven by plaintiff, and under established legal precedent, he had not shown that he was entitled to relief. Following oral argument by both counsel, the Court indicated that it was of the opinion that the motion was well taken. As required by Rule 52(a), FRCP, the Court then proceeded to make oral findings of fact and conclusions of law. A written Order was signed by the Court on March 10, 1986, granting defendant's Motion to Dismiss. Thereafter a judgment was signed by the Court on March 18, 1986, and entered on the docket on March 19, 1986, affirming the decision of the Merit Systems Protection Board and dismissing plaintiff's complaint with respect to the issue of handicap discrimination.

Plaintiff has now filed a Motion for a New Trial or to Alter or Amend Judgment (Motion for New Trial). Rule 59, FRCP, provides that in a motion for new trial in a non-jury case, the Court may amend findings of fact and conclusions of law or make new findings and conclusions and direct the entry of a new judgment. This Court hereby amends it findings and makes new ones primarily for clarification of its ruling on the Rule 41(b) motion in favor of the defendant.

## LEGAL ARGUMENT

Plaintiff's counsel raises a number of issues in his instant Motion for a New Trial. His memorandum in support of such motion is replete with misguided argument, conjecture and, in some instances, outright misrepresentation of the facts and law in this matter.

Plaintiff entered into this trial alleging three theories of recovery, i.e., (1) that the attendance control program under which he was terminated had a disparate impact on handicapped employees; (2) that he was the subject of disparate application of the attendance control program; and (3) that the Postal Service failed to accommodate his handicap.

### Disparate Impact

▌ Plaintiff called two postal officials (Tommie Nix and Robert Gibson) as witnesses and elicited testimony from them which established that the attendance control policy in effect at the Bulk Mail Center was enacted to deal with the problem of *unscheduled* absenteeism. A review of the attendance control policy itself, introduced into evidence by plaintiff as Exhibit 33, substantiates their testimony in this regard. Under the program, employees who experienced three unscheduled absences (referred to as frequencies) within a 90–day period were subject to discipline for the same. Initially, the employee was given an oral warning. However, if his attendance did not improve in subsequent quarters, he was subject to discipline of a progressively more serious nature, up to and including discharge if the problem was not ultimately solved. Robert Gibson testified that the program was applied the same to all employees, whether handicapped or not.

In a handicap case, in order to make out a *prima facie* case of disparate impact, plaintiff would have to show that the attendance control program, although facially neutral, "... disparately disadvantages the protected group of which he is a member and that he is qualified for the position under all but the challenged criteria." *Prewitt v. USPS*, 662 F.2d 292, 306 (5th Cir.1981). *See also, Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

Plaintiff offered no evidence whatsoever to show that the program had a disparate impact on handicapped employees. In fact, he offered no evidence to show how it affected any other employee period.

### Disparate Treatment

▌ Plaintiff also alleged that he was subjected to disparate treatment in connection with his termination. That is, he as-

serted that he was treated differently from other employees in connection with the way in which the attendance control program was administered. It is unclear whether plaintiff attributes any specific motive to the postal officials in question for allegedly according him such differential treatment. However, it is clear that in a handicap discrimination case, to make out a case of disparate treatment, plaintiff must show that he was treated differently from others because of his handicap. *See Prewitt v. USPS, supra,* 662 F.2d at 305, n. 19.

Plaintiff made no showing that: (1) the attendance control program was applied differently to him than to other employees; or (2) that the manner in which the policy was applied to him had anything to do with his physical or mental condition. The only testimony elicited by plaintiff about the manner in which the program was applied came from postal official Robert Gibson who testified that it was applied the same to all employees.

■ In this regard, plaintiff through his counsel, attempts to argue that all of his absences were not unscheduled and thus he should not have been disciplined for the same. However, at the beginning of the trial when plaintiff introduced Exhibits 1 through 20 (which are the leave slips and doctors' excuses covering the absences detailed in Notice of Proposed Removal) the parties specifically stipulated on the record that 11 of these absences were in fact unscheduled. Thus, plaintiff cannot now be heard to assert the contrary.

■ Plaintiff also argues that leave should have been approved in certain instances to cover his absences and that if such leave had been granted he could not have properly been subject to discipline under the attendance control policy. What plaintiff's counsel continues to fail to recognize is that if an absence was unscheduled, the employee was subject to discipline for the same, whether or not he subsequently was granted leave to cover the absence. The approval of leave would merely mean that the employee could be paid for the absence (if he had a leave balance on which to draw), not that the absence would not be counted as a frequency under the attendance control program. Contrary to plaintiff's assertions, nothing in either postal or applicable federal regulations prohibits the Postal Service from disciplining an employee for unscheduled absenteeism.

The only regulation that contains any prohibition against the discipline of an employee who is absent because he is receiving treatment for a service connected disability is Executive Order 5396. That Order provides that leave will be granted to employees who must receive treatment for a service connected disability and that the same will not be used against the employee. However, it specifically provides that in order to avail oneself of that protection, the employee *must give advance notice* of the fact that he will be absent so that arrangements can be made for carrying on the work during his absence. Plaintiff knew what his obligations were in this regard. In fact, he had been specifically advised of the same by the Merit Systems Protection Board in the decision which it rendered with respect to plaintiff's first discharge from the Postal Service. Had he followed these guidelines, it is obvious that he would not have been disciplined under the attendance control program since the program only applied to unscheduled absences.

There was an absolute lack of proof to show that plaintiff was treated differently from any other employee under the attendance control program. Thus, he clearly failed to make out a showing of disparate treatment based on his handicap.

### Reasonable Accommodation

A review of the complaint and the pre-trial order in this judicial action appears to reflect that the alleged handicap for which plaintiff sought accommodation was his service connected mental condition. However, at trial he decided that his diabetes also caused him problems which required accommodation. Plaintiff also asserted that supervisor Jackson was hard on plaintiff because he got water and candy bars at

work breaks. Allegedly this upset plaintiff thereby necessitating additional treatment for his mental illness. However, there is no medical or reliable layman's proof to support the speculative assertion that Mr. Jackson caused the need for additional treatment for mental illness especially of a nature that prevented advance notice as required by the attendance control program.

The proof shows that he did have diabetes, but not to the extent that it substantially limited one or more major life activities that would interfere with plaintiff's work. *See,* 28 C.F.R. 41.31 Handicapped Persons.

■ Additionally, it is undisputed that he had a 30 per cent service connected disability by Veteran Administration standards, Ex. 24; however, this does not automatically render him a handicapped employee especially one who could not comply with the important requirement of advance notice of treatment and a certificate of treatment.

■ However, assuming that plaintiff was afflicted with both of these conditions to a sufficient degree to bring him within the definition of a handicapped employee, as spelled out in 29 C.F.R. § 1613.702(a), he would only be halfway home. In order to be entitled to reasonable accommodation of his handicap, he must come within the definition of a "qualified" handicapped employee. See 29 C.F.R. § 1613.704(a). Section 1613.702(F) of 29 C.F.R. defines a qualified handicapped individual as one "who with or without reasonable accommodation *can perform the essential function of the position in question* without endangering the health and safety of the individual or others . . . ." (Emphasis supplied.)

The case law is clear that in a case alleging failure to accommodate, in order to make out a *prima facie* case, the plaintiff must initially prove that he is a qualified handicapped employee. *Jasany v. USPS,* 755 F.2d 1244 (6th Cir.1985). As discussed hereinafter, plaintiff failed to meet his burden of proof in this regard.

With regard to whether plaintiff was a "qualified" handicapped employee (i.e., one who could perform the essential functions of his job with or without accommodation),

it should be noted that he was not terminated for his failure to perform his assigned tasks. The proof shows that plaintiff could perform his job when he came to work. Rather, he was terminated for his failure to come to work to perform such assigned tasks. As Nix put it, "he couldn't do the job if he wasn't there." It is elemental that one who does not come to work cannot perform *any* of his job functions, essential or otherwise. Thus, plaintiff clearly was not a qualified handicapped employee.

Plaintiff himself acknowleged on cross-examination that it was important for him to be at work. He had already been discharged once previously for absenteeism. And in setting aside that discharge, MSPB had laid down the ground rules for both the plaintiff and the Postal Service concerning absences to receive treatment for his service connected disability. As discussed previously, under MSPB's decision plaintiff was entitled to be absent from work in order to secure such treatment without being disciplined for the same, but he had the obligation to notify his supervisor *in advance* that he would be absent, to produce proper documentation substantiating where he had been and to submit an appropriate leave request to cover the absence. Yet, he failed to comply with the same.

Uncontradicted testimony was elicited by plaintiff's counsel from Robert Gibson that unscheduled absenteeism was running as high as 30% some days before the attendance control program was enacted, but that it dropped to between 3 and 5 per cent after the program went into effect. In discussing the reasons for its enactment, the attendance control policy itself notes at page 1 thereof that unschedule absenteeism: ". . . whether due to illness or emergency, severely impairs the efficiency of postal operations." (Exhibit 33). The Court noted in its oral findings at the time of the Rule 41 motion, the Postal Service is not a welfare agency. If the agency is to meet its statutory mandate to provide efficient mail service, it must have employees who can be counted on to come to work on a regular basis. Thus, it is obvious why the Postal Service could not simply allow plaintiff to come and go as he pleased.

Placing plaintiff in a part-time position (as he suggests in the pretrial order) would not solve the problem. For, as testified to by Tommie Nix, even a part-time employee would still have a fixed schedule. That is, he would still be required to report on given days and hours. Obviously, this would not have solved plaintiff's problem if his claim (that he cannot give advance notice as to when he will be absent) is true.

 Plaintiff also suggested in the pretrial order that he be put in another job with less pressure as an accommodation of his problem. First, it must be noted that a federal agency is under no obligation to transfer a handicapped employee from the job for which he is employed to some other position in order to provide him with work which he can perform. See the district court opinions in *Carty v. Carlin*, 623 F.Supp. 1181, 1188–89 (D.Md.1985); *Alderson v. Postmaster General of the United States*, 598 F.Supp. 49, 55 (W.D.Ok.1984) and in *Jasany v. USPS*, 33 FEP Cases 1115, 117 (N.D.Oh.1983), *aff'd.* 755 F.2d 1244 (6th Cir.1985).

Second, although plaintiff could have exercised his rights under the collective bargaining agreement to secure another position, he failed to do so. Tommie Nix testified that under the collective bargaining agreement in effect between the Postal Service and plaintiff's collective bargaining representative that an ill or injured employee may be transferred to another job if he meets certain criteria specified by the agreement. However, a request must be made by the employee for such a transfer. Nix testified that the plaintiff never made a request for any type of transfer. Although plaintiff testified that he asked his immediate supervisor for a transfer to another job, he was obviously being less than candid in making this assertion. On cross-examination he was shown a copy of a deposition which he had given previously and verified that he had testified at pages 85 and 86 thereof that he had never told anybody that he wanted to transfer to another position nor had he ever tried to bid on another job. Thus, plaintiff's assertion that the Postal Service failed to accommodate him by moving him to another position must be viewed in light of the fact that he failed to even attempt to avail himself of his contractual rights in this regard.

## CONCLUSION

Plaintiff totally failed to present sufficient proof to make out a prima facie case with respect to any of the theories under which he was attempting to try this lawsuit.

This Court's oral findings are hereby amended pursuant to Rules 52(b) and 59(a)(2), FRCP, these new findings and conclusions are substituted, and the Clerk is hereby directed to enter another judgment based upon the findings and conclusions set forth herein.

The Motion for a New Trial and the Amended Motion for a New Trial are overruled.

ALL OF THE ABOVE IS SO ORDERED.