**Katrina D. MONTGOMERY, Plaintiff,**

**v.**

**Anthony M. FRANK, Postmaster General, Defendant.**

**No. 91–72325.**

United States District Court,
E.D. Michigan, S.D.

July 7, 1992.

---

Stephen J. Markman, U.S. Atty., by Geneva S. Halliday, Asst. U.S. Atty., Detroit, Mich., for defendant.

Michael J. Tauscher, Damm & Tauscher, Detroit, Mich., for plaintiff.

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Plaintiff Katrina D. Montgomery filed this action March 24, 1991, alleging handicap discrimination under the Rehabilitation Act, 29 U.S.C. §§ 701–796i. Defendant Postmaster General Anthony M. Frank filed the instant motion for summary judgment May 20, 1992.[1] Plaintiff Katrina D. Montgomery filed a response June 4, 1992; and defendant filed a reply June 17, 1992. For the reasons stated below, this court will grant defendant's motion for summary judgment.

### FACTS

On September 9, 1978, plaintiff received an appointment as a distribution clerk at the Detroit General Mail Facility. Effective September 29, 1980, plaintiff transferred to the position of city carrier and was assigned to the Oak Park station of the Detroit Post Office. City carriers are employed in a unit governed by a collective bargaining agreement, commonly referred to as the "National Agreement," between the United States Postal Service and the National Association of Letter Carriers.

On April 18, 1981, plaintiff became a full-time, regular city carrier. By August 29, 1983, plaintiff had successfully bid on a route at the Seven Oaks station of the

---

1. In his motion for summary judgment defendant failed to seek concurrence from plaintiff's counsel. Pursuant to LR 7.1(a) (E.D.Mich. Jan. 1, 1992),

> It is the responsibility of the movant to ascertain whether or not the contemplated motion will be opposed.... If concurrence is not obtained, the motion shall state that, on a specific date, a conference between attorneys was held in which counsel for the moving party or a party without counsel explained the nature of the motion and its legal basis; that

concurrence in the relief sought was requested and was not granted, or that, despite reasonable efforts which shall be specified in the motion, counsel was unable to conduct a conference with opposing counsel, and hence it has become necessary to bring this motion. *The Court may tax costs for unreasonable withholding of consent....*

(Emphasis added). In order to expedite these proceedings, this court will not deny defendant's motion on these grounds but will proceed to the merits of the case.

Detroit Post Office. At all times since January 1990, postal service Equal Employment Opportunity ["EEO"] posters containing the information regarding whom to contact with a claim of handicap discrimination and the 30–day limit for contacting one of defendant's EEO counselors were posted in conspicuous places both in the lobby and on the workroom floor of the Seven Oaks station.

On or about August 5, 1987, plaintiff was injured when she was assaulted by a customer. In July 1989, plaintiff returned to the Seven Oaks station in a limited duty capacity. In May 1990 plaintiff returned to restricted duty, carrying mail for one to two hours per day. Plaintiff worked an irregular schedule from May 14, 1990, to June 29, 1990, totalling 116 hours.

On May 7, 1990, the Office of Worker's Compensation Programs ["OWCP"] notified plaintiff that her claim of disability due to on-the-job injuries was denied. As a result she lost her eligibility for limited duty. On June 29, 1990, plaintiff filed a Notice of Occupational Disease. Plaintiff stopped working at this time because of her injuries and the pain associated as a result. Plaintiff was placed on a "leave without pay" status beginning June 29, 1990, and lasting until October 29, 1990.

On August 15, 1990, plaintiff was issued a notice of removal for failure to be able to perform the physical requirements of her full-time, letter carrier position. The effective date of her removal was October 5, 1990. On December 17, 1990, plaintiff contacted defendant's EEO counselor via telephone and requested EEO counseling. On March 18, 1991, plaintiff requested reinstatement and a change of classification. The change of classification would have allegedly enabled her to continue working without the physical stress of letter carrying.

On April 2, 1991, plaintiff entered into a settlement agreement with defendant in which plaintiff was scheduled for a fitness for duty examination. The agreement provided that

> The grievant shall be scheduled for a fitness for duty examination. If the FFD results show that the grievant can return to duty without restriction[,] she may apply for reinstatement and her request will be approved.

Glenn Lee decl. at para. 11. On April 15, 1991, John Horne, the Detroit field division general manager/postmaster, issued a final agency decision on plaintiff's EEO administrative complaint which provided as follows:

> This is a final agency decision of the United States Postal Service on the above referenced matter. In that complaint, the complainant alleged she was discriminated against on August 15, 1990 because of her handicap (cervical problem) when she received a Notice of Separation/Disability.
>
> Title 29 CFR 1613.214 requires that a complainant bring the alleged discriminatory act to the attention of the Equal Employment Opportunity Counselor within thirty (30) calendar days of its effective date. According to the Report of Counseling, the complainant contacted the Equal Employment Opportunity Counselor on December 17, 1990[,] or 125 days after the incident. As the complainant did not contact the EEO Counselor within the prescribed time limits, the complaint is rejected as untimely.

*Id.* at para. 10.

On April 22, 1991, the OWCP accepted plaintiff's claim of occupational disease (cervical and dorsal spinal injuries) retroactive to June 29, 1990. On April 25, 1991, plaintiff was given a fitness for duty examination by postal service medical officer M.E. Keller, M.D. On April 29, 1991, plaintiff received notification that she was fit for full duty.

On May 29, 1991, William Smiley, defendant field director of human resources, notified plaintiff that her request for change of status was denied because of her "safety performance." In a letter dated June 11, 1991, Dr. Beale, plaintiff's physician, indicated that plaintiff was totally and permanently disabled from working as a mail carrier. On June 24, 1991, plaintiff received instructions to return to work on June 19, 1991. Plaintiff returned to work

on June 19, 1991, and worked in a limited duty capacity on June 19, 1991, and June 20, 1991. Plaintiff was provided with a "lobby receptionist" position, assisting customers in filling out forms, answering questions, and handing out literature.[2] Plaintiff left early on June 20, 1991, allegedly because of her injuries. On June 21, 1991, plaintiff requested a one-day sick leave and never returned to work.

In September 1991, plaintiff received another notice of removal for failing to attend a fitness for duty examination scheduled for August 19, 1991. This notice of removal has since been resolved and rescinded.

In a letter dated October 21, 1991, plaintiff's doctor indicated that she was permanently disabled and unable to perform the sedentary job of "lobby receptionist."

Retroactive to June 29, 1990, plaintiff has received tax-free, workers compensation benefits equal to 75% of the salary of her full-time, letter carrier position for each and every work day on which she has been unable to work.

## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citation omitted). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a judgment as a matter of law under Fed.R.Civ.P. 50(a). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Consequent-

**2.** Technically, there is no "lobby receptionist" position; rather, it is a make-work position put into place to alleviate the workload of the window clerks and to require some sort of responsibility for those employees who receive disability payments.

ly, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission of issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 929 F.2d 701 (6th Cir.1991). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

## ANALYSIS

In his motion for summary judgment, defendant puts forth four arguments in support of his position: (1) plaintiff failed to timely exhaust her administrative remedies, (2) the April 2, 1991 settlement agreement bars plaintiff claim, (3) plaintiff is not entitled to any relief because she is receiving equivalent payment from OWCP, and (4) plaintiff is not a "qualified handicapped person" under the Rehabilitation Act.

## I

First, plaintiff brings her action under the Rehabilitation Act, which reads in part:

The remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–16), including the application of sections 706(f) through 706(k) (42 U.S.C. 2000e–5(f) through (k)), shall be available, with respect to any complaint under section 501 of this Act, to any employee or applicant for employment aggrieved by the final disposition of such complaint, or by the failure to take final action on such complaint. . . .

29 U.S.C. § 794a(a)(1). Section 717 of the Civil Rights Act of 1964, as referenced in the Rehabilitation Act, authorized the Equal Employment Opportunity Commission ["EEOC"] to promulgate "such rules, regulations, orders and instructions as it deems necessary and appropriate to carry out its responsibilities under this section." 42 U.S.C. § 2000e–16(b). Pursuant to this authority, the EEOC promulgated com-

plaint processing regulations which require a complainant to timely file a complaint.

An agency shall require that a complaint be submitted in writing by the complainant or representative and be signed by the complainant. The complaint may be delivered in person or submitted by mail. The agency may accept the complaint for processing in accordance with this subpart only if:

(i) The complainant brought to the attention of the Equal Employment Opportunity Counselor the matter causing him/her to believe he/she had been discriminated against within 30 calendar days of the date of the alleged discriminatory event, the effective date of an alleged discriminatory personnel action, or the date that the aggrieved person knew or reasonably should have known of the discriminatory event or personnel action. . . .

29 C.F.R. § 1613.214(a)(1).

Plaintiff's removal was effective September 20, 1990, yet she did not contact an EEO Counselor until December 17, 1990, several months later. EEOC regulations do state that

The agency shall extend the time limits in this section when the complainant shows that he/she was not notified of the time limits and was not otherwise aware of them, was prevented by circumstances beyond his control from submitting the matter within the time limits; or for other reasons considered sufficient by the agency.

*Id.* at § 1613.214(a)(4). However, these exceptions do not apply to plaintiff.

The EEOC has no regulation requiring the postal service to give actual notice of rights to employees, but it does require constructive notice. *Id.* at § 1613.204(f). The EEO posters posted in the Seven Oaks station met the requirements of section 1613.204(f) because they were posted both in the lobby and on the workroom floor at the time plaintiff worked there in 1990.

■ A complainant who fails to contact a postal EEO counselor within 30 days of the incident and who is employed at a facility where the requisite EEO posters are posted

will be considered on constructive notice of the time limitations. *Giles v. Carlin*, 641 F.Supp. 629, 635 (E.D.Mich.1986); *see also McClinton v. Alabama By-Products Corp.*, 743 F.2d 1483, 1486 (11th Cir.1984); *Edgeworth v. Fort Howard Paper Co.*, 673 F.Supp. 922, 924 (N.D.Ill.1987); *cf. Decker v. United States Postal Serv.*, 603 F.Supp. 503, 506 (W.D.Ky.1984) (poster inconspicuously placed on bulletin board with numerous other items will not serve as constructive notice). Plaintiff failed to contact the EEO counselor within the regulated time limit. Therefore, under 29 C.F.R. § 1613.214(a)(1), plaintiff's claim may have been waived. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982).

■ However, plaintiff asserts that the 30–day limit should be equitably tolled because plaintiff was not concentrating on legal action but was concerned with her health. In *Zipes*, the Supreme Court held that an EEOC charge may be subject to equitable tolling. *Id.* Plaintiff claims that she was suffering from a great deal of pain and had problems walking, standing and even getting out of bed. However, plaintiff contacted the EEO counselor via telephone. There was no need to walk, stand or get out of bed. Further, she received the notice of removal some 124 days before she responded, and the notice became effective some 73 days before she responded. This inertia does not appear to stem from any disability.

■ Further, the August 15, 1990 notice of removal is the only act that plaintiff responded to by contacting the EEO counselor. Plaintiff claims that she is the victim on ongoing discrimination and indicates certain other acts beyond the August 15, 1990 notice of removal. Plaintiff notes May 29, 1991, when defendant refused to change plaintiff's status due to her safety performance; and September 1991, when plaintiff received another notice of removal, which has been subsequently rescinded. However, plaintiff has failed to contact an EEO counselor for these occasions and has stated no reason for such failure. Therefore, this court finds that plaintiff has waived her claims of discrimination based on these occasions. On this basis, defendant should be granted summary judgment.

## II

Second, defendant argues that the April 2, 1991 grievance settlement bars plaintiff from bringing the instant action. Specifically, defendant states that because the settlement addressed the issues of reinstatement and change of status, plaintiff is estopped from relitigating these issues. In *Strozier v. General Motors Corp.*, 635 F.2d 424 (5th Cir. Unit B 1981), Strozier brought a Title VII suit and a grievance against General Motors for backpay and reinstatement. The parties settled the grievance by awarding Strozier reinstatement and less than complete backpay. Strozier pursued his legal action. The court dismissed the Title VII suit, holding that the grievance and the lawsuit pertained to the same issues. *Id.* at 426. " . . . Strozier cannot now request additional monetary relief merely because he is dissatisfied with the amount he voluntarily agreed to accept in the settlement as compensation for his claims." *Id.; see also Solitron Devices, Inc. v. Honeywell, Inc.*, 842 F.2d 274, 279 (11th Cir.1988) ("one who agrees to settle his claim cannot seek both the benefit of the settlement and the opportunity to continue to press the claim he agreed to settle"); *Jones v. Texas Tech Univ.*, 656 F.2d 1137, 1142 n. 2 (5th Cir. Unit B 1981) ("when fairly arrived at and properly entered into, settlement agreements are generally viewed as binding, final, and as conclusive of rights as a judgment"); *Anderson v. Frank*, 755 F.Supp. 187, 189 (E.D.Mich.1991).

■ In the instant case, the parties have not supplied the court with a copy of plaintiff's grievance or of the April 2, 1991 settlement. The only document the court holds is the "Step 2 Decision" attached to defendant's reply brief. From the pleadings there appears to be a genuine issue of material fact whether the grievance and the lawsuit address identical issues. Defendant states that plaintiff's grievance

sought to make plaintiff whole, which would include all loss compensation. Plaintiff contends that the grievance sought only reinstatement and change of status. Further, plaintiff specifically claims that the grievance and settlement did not address plaintiff's requests for compensation for vacation and sick leave time or for supplemental pay in addition to the OWCP benefits. It is clear that the reinstatement and change of status issues are estopped. However, there is a dispute whether the grievance and settlement addressed all other issues. Therefore, upon the undisputed facts given to this court, summary judgment would be granted to preclude only the issues of reinstatement and change of status.

### III

■ Third, defendant contends that plaintiff is not entitled to any relief on her claim of handicap discrimination because she is receiving the equivalent payment from OWCP. In essence, a federal employee cannot obtain EEO backpay where the employee is paid workers compensation benefits based upon lost salary for the same period. *Alexander v. Frank*, 777 F.Supp. 516, 524 (N.D.Tex.1991); *Black v. Frank*, 730 F.Supp. 1087, 1093 (S.D.Ala. 1990); *EEOC v. Blue and White Serv. Corp.*, 674 F.Supp. 1579, 1582–83 (D.Minn. 1987); *cf. Nichols v. Frank*, 771 F.Supp. 1075, 1079 (D.Or.1991) (backpay award shall be reduced by workers' compensation benefits). In this case plaintiff claims backpay for all time she has not worked since her removal in August 1990. However, plaintiff has received workers compensation benefits constituting 75% of her salary as a full-time letter carrier for the period from June 29, 1990, to the present. This salary is also tax free and includes cost of living adjustments. This court agrees that a grant of backpay to plaintiff would work a windfall in plaintiff's favor.

### IV

■ Finally, defendant contends that plaintiff's claims are barred because she is not a "qualified handicapped person" under the Rehabilitation Act because there exists no reasonable accommodation which would permit her to perform the essential duties of her full-time, city letter carrier position under the National Agreement. The United States Court of Appeals for the Sixth Circuit has held that

> The plaintiff must establish a prima facie case by showing that he was an otherwise qualified handicapped person apart from his handicap, and he was rejected under circumstances which gave rise to the inference that his rejection was based solely on his handicap....

*Harris v. Adams*, 873 F.2d 929, 932 (6th Cir.1989). Therefore, plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *Id.; Jasany v. United States Postal Serv.*, 755 F.2d 1244, 1249–50 (6th Cir.1985). One of the essential requirements of a *prima facie* case of handicap discrimination is that plaintiff is a "qualified handicapped person." *Harris*, 873 F.2d at 933; *Daubert v. United States Postal Serv.*, 733 F.2d 1367, 1370–72 (10th Cir.1984); *Pushkin v. Regents of the Univ. of Colo.*, 658 F.2d 1372, 1385 (10th Cir. 1981); *Carty v. Carlin*, 623 F.Supp. 1181, 1186 (D.Md.1985). The duty to accommodate a handicapped individual arises only when the handicapped person is "qualified." *Prewitt v. United States Postal Serv.*, 662 F.2d 292, 305 (5th Cir. Unit A 1981); *Carty*, 623 F.Supp. at 1186.

A "qualified handicapped person" is defined as a

> ... handicapped person who, with or without reasonable accommodation, can perform the essential functions of the position in question without endangering the health and safety of the individual or others....

29 C.F.R. § 1613.702(f); *see also* 29 U.S.C. § 794. Moreover, as is evident from the legislative history, when Congress enacted the amendments which made the Rehabilitation Act applicable to the Postal Service, it did not intend to require employers to employ individuals who could not perform their jobs. Senator Williams endorsed an amendment to the bill because it

would reassure employers that it is not the intent of Congress to require any employer to hire a person who is not qualified for the position or who cannot perform competently in his or her job.... [Sections 793 and 794] both state explicitly that covered employers need hire and retain only "qualified" handicapped individuals. All authorities interpreting current law have clearly understood that handicapped individuals can be held to the same performance standards that an employer demands of all employees.

124 Cong.Rec. 30323. This interpretation is bolstered by the Supreme Court's holding in *Southeastern Community College v. Davis*, 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979), where the Court stated that an "otherwise qualified applicant" for a nursing school is an applicant "who is able to meet all of the program's requirements in spite of his handicap." *See also School Bd. of Nassau County, Fla. v. Arline*, 480 U.S. 273, 288 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987). Also, the United States Court of Appeals for the Tenth Circuit has indicated that

> Under *Davis* the first test applied was whether the individual in question was qualified for the position in spite of his handicap. If the plaintiff's handicap would preclude him from doing the job in question, the plaintiff cannot be found to be otherwise qualified.

*Pushkin*, 658 F.2d at 1385.

Accordingly, it is a threshold requirement that plaintiff show that she could perform the essential functions of the job for which she was hired. *Jasany v. United States Postal Serv.*, 33 Fair Empl.Prac. Cas. (BNA) 1115, 1117 (N.D.Ohio 1983), *aff'd*, 755 F.2d 1244 (6th Cir.1985); *see also Daubert*, 733 F.2d at 1372; *Pushkin*, 658 F.2d at 1385. Plaintiff admits that she is totally disabled as a mail carrier and that no reasonable accommodation by the postal service would allow her to perform the

essential functions of her job as a mail carrier. *See* Montgomery dep. at 72; plaintiff's answer to interrog. no. 1 at no. 1C ("No work, no standing, no walking, no carrying mail, no climbing"); *id.* at no. 1D ("No constant or repetitive bending, lifting, twisting, turning, pushing, pulling, stooping, sitting, standing.... totally disabled as a mail carrier"); *id.* at no. 1G.

It is unquestioned that plaintiff is unable to carry out the duties of city mail carrier or any other position offered by defendant.[3] Therefore, plaintiff fails to meet the criteria of "qualified handicapped person." Further, the defendant

> is under no obligation to transfer a handicapped employee from the job for which he is employed to some other position in order to provide him with work which he can perform.

*Wimbley v. Bolger*, 642 F.Supp. 481, 486 (W.D.Tenn.1986), *aff'd*, 831 F.2d 298 (6th Cir.1987); *see also Alexander*, 777 F.Supp. at 524; *Black*, 730 F.Supp. at 1091; *Carty*, 623 F.Supp. at 1188; *Alderson v. Postmaster Gen.*, 598 F.Supp. 49, 55 (W.D.Okla. 1984). Therefore, plaintiff's claims should be dismissed.

### ORDER

Therefore, it is hereby ORDERED that defendant's motion for summary judgment is GRANTED.

It is further ORDERED that plaintiff's complaint is DISMISSED on the merits.

SO ORDERED.

---

**3.** Plaintiff complained that the "make work" position of "lobby receptionist" aggravated her

back injuries. Exhibit B to Glenn Lee decl.