Tim A. **ELLIOTT**, Plaintiff,

v.

UNITED STATES POSTAL SERVICE, National Post Office Mail Handlers, Watchmen, Messengers, and Group Leaders Division of the Laborer's International Union of North America, AFL–CIO, and Mail Handlers Local 307, Defendants.

No. K84–360.

United States District Court, W.D. Michigan, S.D.

Nov. 14, 1985.

James M. Marquardt, and Alexander C. Lipsey, Kalamazoo, Mich., for plaintiff.

John A. Smietanka, U.S. Atty. by Thomas O. Martin, Asst. U.S. Atty., Grand Rapids, Mich., for U.S. Postal Service.

Miller, Cohen, Martens & Ice by Bruce A. Miller and Peter A. Caplan, Detroit, Mich., for Unions.

## OPINION

ENSLEN, District Judge.

This case is currently before the Court for the second time on Defendants' motions for summary judgment. Plaintiff, a former mail handler for the United States Postal Service (USPS), was discharged from his employment on July 18, 1983. On August 27, 1984, after exhausting his contractual remedies, Plaintiff filed the instant suit claiming (1) that his termination constituted handicap discrimination in violation of Sections 501 and 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 and 794; (2) that said termination constituted a breach of the collective bargaining agreement between the USPS and the National Post Office Mail Handlers, Watchmen, Messengers, and Group Leaders Division of the Laborers' International Union of North America, AFL–CIO (National Union), in violation of 39 U.S.C. § 1208(b);[1] and (3) that the National Union and Mail Handlers Local 307 (Local 307) breached their duty of fair representation.[2] Plaintiff's claim of Title VII handicap discrimination in Count I was dismissed by this Court on October 8, 1985.

---

1. Actually, Count II was pled as a violation of Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. However, all parties agree that the claim is properly brought under 39 U.S.C. § 1208(b). Section 1208(b) is the Postal Service's analog to Section 301, and Section 301 precedent is applied in Section 1208(b) cases. *Bowen v. United States Postal Service,* 459 U.S. 212, 103 S.Ct. 588, 74 L.Ed.2d 402 (1983).

2. Count III originally alleged claims against two additional individual Defendants, John R. Green and David Mead. Pursuant to stipulation, the claims against these individuals were dismissed on September 23, 1985.

The Union Defendants have brought a motion for summary judgment on Count III claiming that neither the National Union nor Local 307 breached their duty of fair representation and, in any event, Plaintiff's suit is barred by the applicable statute of limitations. Defendant USPS has also moved for summary judgment on Count II claiming alternatively that Plaintiff's discharge was not in breach of the labor contract and that it cannot be liable for wrongful discharge under the contract absent a showing of unfair representation on the part of the Union Defendants. The standard for deciding motions for summary judgment is well known in this Circuit and need not be repeated here. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Adams v. Union Carbide Corp.*, 737 F.2d 1453, 1455–56 (6th Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 545, 83 L.Ed.2d 432 (1985); *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir.1962). After a brief background discussion, the two motions will be discussed *seriatim.*

## I. BACKGROUND

Plaintiff, a Vietnam veteran, was hired by the USPS on November 13, 1978. The reason given for his 1983 discharge was excessive absenteeism. The following is a capsulization of Plaintiff's disciplinary record relating to attendance:

| Date | Action | Reason |
|---|---|---|
| July 18, 1983 | Discharge | Absence Without Official Leave (AWOL) and Failure to be in Regular Attendance (FRA) |
| June 13, 1983 | Notice of Proposed Removal | AWOL and FRA |
| February 7, 1983 | 14-Day Suspension | AWOL |
| August 10, 1982 | Notice of Proposed Removal (held in abeyance for one year as of November 2, 1982) | AWOL and FRA |
| May 21, 1981 | 14-Day Suspension | AWOL |
| August 14, 1980 | 14-Day Suspension | FRA |
| March 24, 1980 | 14-Day Suspension | AWOL |
| January 23, 1980 | 11-Day Suspension | AWOL |
| October 31, 1979 | 10-Day Suspension | FRA |
| March 29, 1979 | 7-Day Suspension | AWOL |
| March 20, 1979 | Letter of Warning | AWOL |

(Union Brief, Ex. C).

Local 307 filed a grievance on Plaintiff's behalf over his discharge. (Elliott Dep.Ex.

3). After the grievance was denied in the first three steps of the contractual procedure (Elliott Dep.Ex. 4–7), the National Union certified the matter to the fourth and final step—binding arbitration. (Elliott Dep.Ex. 8–9). The arbitration hearing was held on December 2, 1983, and the arbitrator's opinion of February 28, 1984 upheld Plaintiff's termination. (Elliott Dep.Ex. 13).

In a nutshell, it is Plaintiff's contention that his frequent absences were caused by a military service-connected disability and that most of these absences were medically documented as required by the labor contract. (Elliott Dep. at 47–48). For this reason, Plaintiff argues that his discharge was in violation of both the "just cause" and "handicap discrimination" clauses of the collective bargaining agreement. Plaintiff also contends that his dismal disciplinary record is the result of a pattern and practice of arbitrary and discriminatory representation of his claims by Local 307 officers, specifically John Green and David Mead, due to alleged personal animosity and collusion between these officers and certain members of management. Finally, Plaintiff argues that his representation at the arbitration hearing by Local 307 president Jimmie Compton constituted "gross ineptitude." (Plaintiff's Brief at 13).

## II. UNION'S MOTION

The Union Defendants argue in their motion for summary judgment that there is no evidence that either the Local or National Union breached their duty of fair representation in the handling of Plaintiff's final grievance. In this respect, the following facts are uncontested. Neither Green nor Mead, the two Union officers who Plaintiff alleges were motivated by personal animosity and acted in bad faith, had any involvement in the grievance arising out of the June 13, 1983 Notice of Proposed Removal. (Elliott Dep. at 113). Rather, another Union steward, Shirley Grimm, handled the matter through the first two steps of the grievance procedure. Glenn Berrien, a Lo-

cal 307 officer, handled Plaintiff's grievance at step three. Plaintiff testified at his deposition that he had no reason to believe that either Grimm or Berrien acted arbitrarily or in bad faith in representing him in this matter. (Elliott Dep. at 94–99).

After the Union made the decision to appeal the step three decision to arbitration, the case was taken over by the Local's president, Jimmie Compton. Again, Plaintiff does not believe that Compton harbored any personal animosity toward him. (Elliott Dep. at 99). Nevertheless, Plaintiff testified that he was dissatisfied with Compton's efforts at the arbitration hearing, and on that basis, concluded that Compton's actions constituted bad faith.

Q. Any reason to believe that he [Compton] was acting towards you in bad faith?

A. Just the way he handled my arbitration.

Q. You disagree with the way he handled your arbitration?

A. Very much so.

Q. Do you feel it was because he was acting out of bad faith or just because he didn't handle it the way you wanted him to?

A. I think it was kind of out of bad faith.

Q. What facts do you have to support that claim?

A. *I don't have any. It's just sort of a gut feeling.* He never wrote me a letter saying I'm going to represent you in bad faith.

(Elliott Dep. at 99–100) (emphasis added). Plaintiff's dissatisfaction with the presentation of his case at arbitration stems from his perception that Compton virtually ignored, or at lest down-played, arguments relating to Plaintiff's military disability and the fact that most of his absences were documented, and relied primarily on the argument that the termination was procedurally flawed because management had not followed its own regulations regarding internal review. Plaintiff characterizes the latter argument as a mere "technicality." (Elliott Affid. ¶¶ 10, 13).

As an initial matter, Plaintiff's allegation that Compton's presentation to the arbitrator concentrated on the single procedural technicality theory is simply incorrect. In fact, the Union's Opening Statement at arbitration advanced a detailed contractual argument that Plaintiff's discharge was not for "just cause." (Compton Affid.Ex. F). At the hearing itself, Plaintiff testified as to the reasons for his absences and the nature of his military disability. (Compton Affid. ¶ 6). Exhibits were submitted to the arbitrator outlining the USPS policy regarding medical leaves and documenting Plaintiff's physical condition. (Compton Affid. ¶¶ 7–8 & Ex. E, G). Furthermore, a post-hearing brief was submitted to the arbitrator three and one-half weeks after the hearing summarizing all of the arguments listed above. (Compton Affid.Ex. H). Finally, the arbitrator addressed these very issues in his Opinion and Award of February 28, 1984. (Compton Affid.Ex. I). Plaintiff's bald allegation that "virtually all of Mr. Compton's presentation was based on the procedural technicality defense, and that all other defenses, including handicap or disability discrimination, were mentioned by Mr. Compton only in passing" (Elliott Affid. ¶ 13), cannot withstand the Union's specific evidentiary submissions.

■ All parties recognize that "[a] breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). Conclusory allegations of bad faith, absent an affirmative showing by the Plaintiff, will not sustain a cause of action against the Union for breach of its duty. *Whitten v. Anchor Motor Freight, Inc.,* 521 F.2d 1335, 1341 (6th Cir.1975), *cert. denied,* 425 U.S. 981, 96 S.Ct. 2188, 48 L.Ed.2d 807 (1976); *Balowski v. UAW,* 372 F.2d 829, 835 (6th Cir.1967). Of course, a showing of bad faith is not an absolute prerequisite to the maintenance of a cause

of action for unfair representation. It will suffice if the Plaintiff can establish that the Union's conduct was arbitrary. *Whitten*, 521 F.2d at 1341; *Dill v. Greyhound Corp.*, 435 F.2d 231, 238 (6th Cir.1970), *cert. denied*, 402 U.S. 952, 91 S.Ct. 1622, 29 L.Ed.2d 122 (1971). While mere negligence on the part of the Union is insufficient, *Ruzicka v. General Motors Corp.*, 523 F.2d 306, 310–11 (6th Cir.1975) (*Ruzicka I*), gross mistake or inaction without a rational explanation may constitute arbitrariness and breach. *Milstead v. Teamsters, Local 957*, 580 F.2d 232, 235 (6th Cir.1978); *Balowski*, 372 F.2d at 834.

■ I find, as a matter of law, that Plaintiff's allegation that his arbitration was handled ineptly does not constitute a claim of gross mistake or inaction without a rational explanation. In the first place, Plaintiff's grievance was taken to fourth-step arbitration and therefore, there was no "inaction." *Cf. Williams v. Teamsters, Local 984*, 625 F.2d 138 (6th Cir.1980) (per curiam); *Ruzicka I, supra.* Secondly, even assuming that Compton did not advance every argument at the arbitration hearing that Plaintiff requested, an assumption that is unwarranted by the facts of the case as discussed above, such negligent misrepresentation constitutes at most an error in judgment and does not amount to the reckless disregard required to establish arbitrariness. *Castelli v. Douglas Aircraft Co.*, 752 F.2d 1480, 1482–83 (9th Cir. 1985); *see also Poole v. Budd Co.*, 706 F.2d 181, 185 (6th Cir.1983) ("Union representatives are not to be strictly held to the standards of attorneys."). Accordingly, I find that the Union's representation of Plaintiff in his final grievance was not conducted in bad faith or arbitrarily.

Plaintiff makes a third argument relating to racial discrimination. Plaintiff alleged at his deposition that he was discriminated against because he was white:

Q. Do you have any reason to believe that anyone connected with the National Union was motivated by discriminatory intent toward you?

A. Just race.

Q. And what leads you to believe that someone or anyone connected with the National Union was motivated by race towards you?

A. They're all black.

Q. What else do you have to support your claim?

A. You get too many blacks, you get in trouble in the post office.

(Elliott Dep. at 119). Plaintiff never did specifically say who discriminated against him because of his race or set forth any particular instance in which he was the victim of racially discriminatory animus. Indeed, Plaintiff admitted that he had never even met any of the Union officers who he alleged were motivated by racial considerations. (Elliott Dep. at 119). Once again, bald allegations of impropriety without so much as an attempt at an affirmative showing by the Plaintiff cannot withstand a properly supported motion for summary judgment. *Whitten, supra; Balowski, supra.*

The only evidence that Plaintiff offers with respect to arbitrary, discriminatory or bad faith conduct by Union representatives relate to past incidences of grievance representation by John Green and David Mead. Plaintiff alleged that Green, Local 307's Administrative Vice President, only properly represented his personal friends in grievances. (Elliott Dep. at 85). He further alleged that Green regularly colluded with members of USPS management on grievances to the detriment of Plaintiff. (Elliott Dep. at 77–81). This contention is largely concurred in by Shirley Grimm, a former Union steward who worked with both Plaintiff and·Green. Grimm testified that "Green admitted to her in Union meetings that he routinely 'played ball' with Postal Service management in resolving some grievances, but did not in others." (Grimm Affid. ¶ 11). Moreover, Grimm stated that Green colluded with management in the handling of many of Plaintiff's grievances up to and including the one resulting from the May 1981 suspension. (Grimm Affid. ¶ 12). Grimm also offers some "Absence Analysis" records purportedly maintained

by USPS management for the calendar years 1982–1983 that indicate that at least three other employees on Plaintiff's shift had "absences and/or tardinesses at least equal to, if not more severe than, those shown on Elliott's record," yet these three employees did not receive similar discipline. (Grimm Affid. ¶¶ 13–15 & Ex. K–N). Yet another former steward, Marvin Dow, testified at deposition that Green maintained close personal relationships with certain members of management while he was a Union officer (Dow Dep. at 12–14, 53), and speculated that these relationships may have influenced him in his handling of grievances. (Dow Dep. at 7). However, none of the matters that Dow testified to directly relate to Plaintiff's representation.

With respect to representation by David Mead, Plaintiff does not claim that Mr. Mead harbored any personal animosity toward him or that Mead discriminated against him personally. Rather, Plaintiff claims that Mead's actions in his Union capacity were regularly controlled by John Green. It is Plaintiff's contention that in every instance over the years that Mead represented him, Mead acted "incompetent[ly]." Once again, however, Plaintiff can point to no specific instance in which Mead breached his duty of fair representation as a Union officer. (Elliott Dep. at 86–89).

While I have already made reference to it earlier in this opinion, it is worth repeating that neither Green nor Mead had any contact with Plaintiff's final grievance. Indeed, the last grievance in which either of these individuals represented Plaintiff was the one arising out of the August 1982 Notice of Proposed Discharge. (Elliott Dep. at 113–14). Therefore, none of the instances of alleged unfair representation involving John Green or David Mead are actionable as they all occurred outside the six month statute of limitations period found in Section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). *Del-Costello v. Teamsters*, 462 U.S. 151, 155, 103 S.Ct. 2281, 2285, 76 L.Ed.2d 476 (1983); *Smith v. General Motors Corp.*, 747 F.2d 372, 375 (6th Cir.1984).

██ Plaintiff, however, seeks to characterize the past acts of alleged bad faith or discriminatory representation by Green and Mead as part of a pattern of culpable conduct that contributed to his ultimate discharge. In Plaintiff's opinion, the years of unfair representation damaged his disciplinary record to such an extent that he went into his final grievance with "the deck stacked against him." (Plaintiff's Brief at 9). Plaintiff cites three cases from the Third and Ninth Circuits for the proposition that a pattern of union conduct over the course of an employee's tenure may be considered in determining whether a single act constitutes a breach of the duty of fair representation. *See Peterson v. Lehigh Valley District Council*, 676 F.2d 81, 87 (3d Cir.1982); *Castaneda v. Dura-Vent Corp.*, 648 F.2d 612, 618 (9th Cir.1981); *Hughes v. Teamsters, Local 683*, 554 F.2d 365, 367–68 (9th Cir.1977) (per curiam). I do not find these cases persuasive. In both *Peterson* and *Hughes*, the past acts in question all occurred within the applicable statute of limitations period. *Peterson*, 676 F.2d at 83; *Hughes*, 554 F.2d at 366–67. *Castaneda* merely remanded the case back to the district court to reconsider the claims in light of *Hughes*. 648 F.2d at 618. In the principal case, all the alleged discriminatory acts of Green and Mead unquestionably occurred outside the six month period.

An analogy can be drawn to the "continuing violation" theory often used in Title VII cases. A past act of alleged employment discrimination "may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences." *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). Therefore, a Plaintiff claiming a continuing violation of Title VII must establish "a series of related acts, one or more of which falls within the limitations period, or the maintenance of a discrimina-

tory system both before and during the [limitations] period." *Valentino v. United States Postal Service*, 674 F.2d 56, 65 (D.C. Cir.1982) (quoting B. Schlei & P. Grossman, *Employment Discrimination Law* 232 (Supp.1979)). The fact that the victim of the discrimination continues his employment long after the past discriminatory act does not, by itself, extend the statutory period in which he can bring suit on that act. *Delaware State College v. Ricks*, 449 U.S. 250, 257, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980); *Evans*, 431 U.S. at 558, 97 S.Ct. at 1889. In applying this Title VII theory to the principal claim of unfair representation, it is obvious that all of the allegations of arbitrary, discriminatory and bad faith conduct on the part of John Green and David Mead are irrelevant unless Plaintiff can prove, or in this case, allege sufficient facts to establish a genuine issue in dispute as to, the unfairness of his union representation during the limitations period (i.e., the representation in his final grievance).

The Court has already held that the Union Defendants did not breach their duty of fair representation in representing Plaintiff in his grievance arising out of his June 1983 discharge. Furthermore, Plaintiff does not allege any other breaches of this duty within the six month statute of limitations period. For this reason, the Court grants summary judgment in favor of the National Union and Local 307 on Count III of Plaintiff's complaint.

### III. USPS' MOTION

The USPS has also moved for summary judgment on Plaintiff's claim for breach of the employment contract brought under 39 U.S.C. § 1208(b). If this was a traditional hybrid Section 301/unfair representation case, the Court's grant of summary judgment in favor of the Union on the representation claim would compel the grant of summary judgment in favor of the employer on the contract claim. This is because an employee's ability to maintain a cause of action for discharge in breach of a labor contract is predicated on his ability to demonstrate that his union breached its

duty of fair representation. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570–71, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976). The result is the same when the employer is the United States Postal Service and the action is brought under Section 1208(b). *Abernathy v. United States Postal Service*, 740 F.2d 612, 617 (8th Cir. 1984); *Melendy v. United States Postal Service*, 589 F.2d 256, 260 (7th Cir.1978); *see generally supra* note 1. Therefore, summary judgment is granted in favor of the USPS on Count II of Plaintiff's complaint.

An appropriate judgment order will be entered forthwith.