Gerald G. FLORENCE

v.

Anthony M. FRANK, Postmaster General of The United States.

No. CA3–90–0310–G.

United States District Court, N.D. Texas, Dallas Division.

Sept. 16, 1991.

**1056**

Stafford Hutchinson, Asst. U.S. Atty., Dallas, Tex. and William H. Brown, Jr., Office of Field Legal Service, U.S. Postal Service, Memphis, Tenn., for U.S. Postal Service.

Mark Williams, Fort Worth, Tex., for plaintiff Gerald Florence.

## ORDER

FISH, District Judge.

After making an independent review of the pleadings, files and records in this case, and the findings, conclusions and recommendation of the United States Magistrate Judge, I am of the opinion that the findings and conclusions of the Magistrate Judge regarding defendant's **Motion for Summary Judgment** are correct and they are adopted as the findings and conclusions of the Court.

IT IS THEREFORE ORDERED that the Findings, Conclusions and Recommendations of the United States Magistrate Judge are adopted.

SIGNED AND ENTERED.

## FINDINGS, CONCLUSIONS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE ACTING AS SPECIAL MASTER

JANE E. JACKSON, United States Magistrate Judge. Sept. 6, 1991.

Pursuant to the District Court's Order of August 23, 1990, referring the above referenced case to the undersigned to act as a special master, pursuant to Rule 53, Fed. R.Civ.P. and Title 28, United States Code, Section 636(b)(2), the following findings, conclusions and recommendations of the Magistrate Judge regarding the Motion for Summary Judgment are submitted to the District Court.

This is a suit by Gerald G. Florence ("Florence"), plaintiff, against the United States Postal Service ("Postal Service") based on Title VII of the Civil Rights Act

of 1964, (as amended, 42 U.S.C. § 2000e *et seq.*); § 501 of the Rehabilitation Act of 1973 (as amended 29 U.S.C. § 791 *et seq.*) and 39 U.S.C. § 1208(b) of the Postal Reorganization Act (39 U.S.C. § 101 *et seq.*). Plaintiff complains that he has been discriminated against on the basis of race and sex in violation of Title VII. He also complains that he has been discriminated against on the basis of his handicap in violation of the Rehabilitation Act, and further that the Postal Service breached a collective bargaining agreement by transferring him to a particular postal station in violation of 39 U.S.C. § 1208(b) of the Postal Reorganization Act.

Before the Court is the defendant's **Motion for Summary Judgment.** For the reasons set out below, I recommend that the motion be granted.

## FACTUAL SUMMARY

Plaintiff is a thirty-four (34) year old black male employee of the Postal Service hired on July 8, 1985, as a letter carrier. (Plaintiff's Deposition[1] at 7) He suffered a back injury (a chronic lumbosacral spine sprain) as a result of an on-the-job injury sustained in an automobile accident on August 21, 1986. (Id. at 77); (Deposition Exhibit[2] No. 1). As a result of his injury, he was out of work for seven (7) months. (Id. at 17.) He applied for and was paid injury compensation by the Department of Labor for the seven (7) months he was out. (Id. at 18.) At the time of his injury his duties included walking and carrying mail. (Id. at 16) His injury prevented him from those activities. (Id.) When he returned after seven (7) months, he was unable to return to full duties. (Id. at 18) In July, 1987, he bid on a letter carrier job at the Highland Hills Station which he was awarded on the basis of his seniority. (Id. at 19) The specific job required eight (8) hours, however, at this time plaintiff could only work four (4) hours and do sedentary work. (Id. at 204–205, Henderson Affidavit[3] P. 2, Dep.Ex. No. 1) The bid position was route 4151, "a park and loop" route, which required walking and carrying mail. (Hend. Supp.Aff. page 3) This job entailed the same duties as his previous carrier job. He began work on July 6, 1987. (Pl.Dep. at 19 and 20; Hend.Aff. P. 2) His supervisor at the Highland Hills Station was Clyde Henderson, a black male. (Id. at 20; Hend. Aff. at 1, 2). In a report dated July 16, 1987, ten (10) days after his transfer, plaintiff's attending physician indicated that it was "undetermined" if plaintiff's disability would last ninety (90) days or longer but that his prognosis was good for "eventual recovery". (Dep.Ex. No. 1) Plaintiff was at the Highland Hills station from July 6th through August 19th of 1987. (Pl.Dep. at P. 24) Highland Hills was not set up to handle limited duty employees on a long-term basis. (Hend.Supp.Aff. at 2) In an August 5, 1987, Attending Physician's Supplemental Report, plaintiff's prognosis was again stated to be "good for eventual recovery" however, it was still undetermined whether or not his disability would last longer than ninety (90) days. (Dep.Ex. No. 2) According to Henderson, based upon this August report indicating the undetermined length of his disability, his inability to lift over ten (10) pounds or work more than four (4) hours, he was sent to Northlake. (Hend.Supp.Aff. at 2.; Hend.Aff.Ex. D) Northlake was a designated limited duty station that had a large number of male and female, both black and white, employees from facilities throughout Dallas unable to perform the full range of their regularly assigned duties due to work-related injuries. (Pl.Dep. at 24, 25, 58; Marquez Aff. at 3)

At the time plaintiff was sent to Northlake there was a white female limited duty employee named Sandy Bonilla who remained at Highland Hills. (Pl.Dep. at 58–59) Plaintiff did not know the nature or duration of her injury. (Id. at 59) There were several other limited duty female employees who remained at Highland Hills, however, plaintiff also did not know the nature of their injuries. (Id. at 60–63)

---

**1.** Hereinafter "Pl.Dep.".

**2.** Hereinafter "Dep.Ex.".

**3.** Hereinafter "Hend.Aff." and "Hend. Supp.Aff".

Postal Service records reflect that Bonilla's injury at this time consisted of a pulled right thigh muscle which had occurred on the job on August 7, 1987. (Hend.Supp. Aff. at 2; Exhibit A) Her prognosis as of the date of her injury was "good". (Hend. Supp.Aff., Exhibit B) This report was furnished to Postal Service. (Hend.Supp.Aff., P. 2.) She was released by her doctor back to full-duty twenty (20) days after her injury on August 27, 1987. (Hend.Supp.Aff. at 2, 3, Ex. C) After his transfer to Northlake, plaintiff was briefly returned in February, 1988, to Highland Hills. (Hend.Aff., P. 3, Exhibit E) He could at this time carry mail on a limited two-hour per day basis. (Pl.Dep. at 39, 205, 206) He was sent back to Northlake after a few weeks at Highland Hills due to his inability to carry mail. (Hend.Aff. at 3) As of January 1, 1988, his treating physician's report still showed that he could work only four (4) hours a day and was unable to lift over ten (10) pounds. Again his prognosis was "good for eventual recovery." (Dep.Ex. 4) In another physician's report on April 19, 1988, plaintiff's doctor reported that he could now work eight (8) hours but still could not carry mail. (Dep.Ex. No. 5) By November 17, 1989, plaintiff's treating physician reported that plaintiff's disability was permanent and that he could no longer carry mail. (Dep.Ex. No. 7)

Plaintiff challenged his transfer to Northlake under the grievance procedure in effect between Postal and the National Association of Letter Carrier, AFL–CIO (NALC). The grievance proceeded through all the steps of the grievance process, ultimately going to arbitration. (Pl.Dep. at 85; Dep.Ex. 12) After a hearing, the arbitrator denied plaintiff's grievance. (Pl.Dep. at 69; Dep.Ex. 14); (Marquez' Aff. at 3, 4) Plaintiff now maintains that the union did not include certain documents in the grievance procedure or make several important arguments in his behalf. (Pl.Dep. at 86, 87, 89) Plaintiff also believes that several essential questions were not asked of him by his union representative, George White,

during the arbitration. (Pl.Dep. at 124, 125, 139, 143–48)

Plaintiff also filed an EEO complaint to challenge his transfer from Highland Hills to Northlake. (Pl.Dep. at 73, Exhibit 9) That complaint was investigated by the Postal Service and a final agency decision found that plaintiff had not been discriminated against in connection with his transfer to Northlake. (Pl.Dep. at 74) The EEOC affirmed that finding on appeal. (Pl.Dep. at 74, Exhibits 10 & 11) Plaintiff then filed the instant suit.[4]

### Standards Applicable to Summary Judgment Motions

Summary judgment is appropriate under Fed.R.Civ.P. 56(c) if the record evidence shows that no genuine issue exists regarding a material fact and that as a matter of law, the movant is entitled to judgment. *LTV Educational Sys., Inc. v. Bell*, 862 F.2d 1168, 1172 (5th Cir.1989). The moving party has the burden of establishing the absence of a genuine issue of material fact. *Everhart v. Drake Management, Inc.*, 627 F.2d 686, 690 (5th Cir.1980). To determine which factual issues qualify as material, the court first examines the substantive law governing the case, and then, to determine whether an issue of material fact is genuine, the court must determine whether the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Tarka v. Franklin*, 891 F.2d 102, 104 (5th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1809, 108 L.Ed.2d 940 (1990). In considering whether to grant the summary judgment motion, the court must view the evidence in the light most favorable to the nonmovant. *Erco Industries Ltd. v. Seaboard Coast Line R.R. Co.*, 644 F.2d 424, 428 (5th Cir.1981). The court should also make all justifiable inferences in the nonmovant's favor. *O'Neill v. Air Line Pilot's Ass'n Int'l*, 886 F.2d 1438, 1443 (5th Cir.1989).

When the movant makes a properly supported motion, the nonmovant may not rest

---

**4.** Plaintiff originally named the NALC as a defendant in this case, however, later dismissed them as a party.

on unsupported allegations or simple denials of the movant's pleadings. *LTV Educational Sys.*, 862 F.2d at 1172; Fed. R.Civ.P. 56(c). In these circumstances, the nonmovant must go beyond the pleadings and must specify the evidence before the court which shows that genuine issues exist which require resolution at trial. *O'Neill*, 886 F.2d at 1443. The court does not determine the credibility of the nonmovant's evidence, instead, for the purposes of the motion, the court assumes that the nonmovant's evidence is believable. *Id.*

### Race and Sex Discrimination

■ In a suit arising under Title VII, although the elements of each claim may differ, the ultimate burden rests upon the plaintiff to prove unlawful discrimination by a preponderance of the evidence, that burden of persuasion never shifts to the defendant. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253–55, 101 S.Ct. 1089, 1093–1095, 67 L.Ed.2d 207 (1981); *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25, 99 S.Ct. 295, 296, 58 L.Ed.2d 216 (1978). Rules governing the order of proof were first set forth in *McDonnell–Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The plaintiff can create a rebuttable presumption of discrimination by establishing a "prima facie case". A minimal showing is all that is necessary to establish a prima facie case. In essence, a plaintiff can meet the burden by showing merely that he was within a protected class, that he was qualified for the job in question, and that the employees outside of the protected class were more favorably treated. *McDonnell–Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. These rules of proof were later refined in *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978), and essentially the showing that the plaintiff must make is that he was treated differently from similarly situated individuals, that a causal relationship exists between his race (or sex) and the adverse employment decision. *Furnco Construction Corp.*, 438 U.S. at 575–77, 98 S.Ct. at 2948–50. Once the plaintiff makes out a prima facie case under Title VII, the burden of production shifts to the employer. To rebut the presumption of intentional discrimination, the employer must articulate legitimate nondiscriminatory reasons why the complained of actions on the part of the employer were taken for legitimate nondiscriminatory reasons. *Burdine*, 450 U.S. at 253–54, 101 S.Ct. at 1093–94. Once a legitimate reason for the employment decision has been articulated, the employer rebuts the initial presumption of intentional discrimination created by the plaintiff's prima facie case. The burden of production thus shifts back to the plaintiff to prove that the reasons articulated by the employer are pretextual. *Burdine*, 450 U.S. at 255, 101 S.Ct. at 1094. The plaintiff can prove pretext "either [1] directly by persuading the Court that a discriminatory reason more likely motivated the employer or [2] indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. Plaintiff's claim alleges disparate treatment in which the ultimate issue is whether the employer intentionally discriminated against the plaintiff. *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983).

Within a summary judgment context, the movant must prove that no genuine issue of fact exists with respect to a material element and, therefore, the movant is entitled to judgment as a matter of law. In contrast, the nonmovant need not prove every element of his prima facia case, instead, he need only show that issues of material fact exist with respect to the elements of his prima facie case. *Thornbrough*, 760 F.2d at 641, n. 8. The test is the same when the complainant-nonmovant alleges that the employer's reasons for its actions are pretextual. The complainant need not prove pretext, the complainant need only raise a fact issue regarding pretext. *Id.* at 646.

■ Applying the above standards to the instant case, I find that plaintiff's claims of race and sex discrimination are subject to summary judgment. Plaintiff simply has

not established that he was treated differently than similarly situated individuals. The only individual plaintiff points to as similarly situated to him is Ms. Bonilla, a white female who plaintiff complains remained at the Highland Hills Station when he was transferred to Northlake. Bonilla's injury, however, was such that she was not in a similar situation as plaintiff at the time of his transfer. Plaintiff sustained a serious back injury in a car accident requiring that he miss work entirely for seven (7) full months. (Pl.Dep. at 17, 77; Dep.Ex. Nos. 1–7) He was limited to four (4) hours work per day from the time he returned to work until approximately April 19, 1988, when he was allowed to work eight (8) hours but still could not carry mail. (Dep.Ex. No. 5) His prognosis throughout this time was "good for *eventual* recovery." (emphasis added) (Dep.Ex. No. 1, 2, and 4)

Bonilla, on the other hand, had an pulled thigh injury which lasted a total of twenty (20) days. (Hend.Supp.Aff. at 2, Ex. A) Her prognosis at the time of her injury was "good". (Id., Ex. B) The doctor released her to full duty within twenty (20) days after her injury. (Id. at 2, 3, Ex. C) At the time of his transfer to Northlake, plaintiff had been disabled due to his injury for approximately one (1) year. The disparity in types of injuries suffered by Bonilla and plaintiff prevents, under even the most generous view, a determination that they were similarly situated. Moreover, when asked the basis of his race and sex claim in connection with his transfer to Northlake, he stated that he did not know the nature of Ms. Bonilla's injury, nor did he know the nature of the injuries of any of the other white female employees on limited duty status who remained at Highland Hills when he was transferred. (Pl.Dep. at 58, 59–63)

Assuming *arguendo*, that due to their similar designation as "limited duty employees", that they were therefore similarly situated, plaintiff's claims of race and sex discrimination must still fall to summary judgment. Defendants have with competent summary judgment evidence articulated a legitimate, nondiscriminatory reason for the transfer to Northlake. In Clyde Henderson's affidavit, he indicates that when it became apparent that plaintiff's recovery would be prolonged upon his transfer to Highland Hills, a decision was made to reassign him to Northlake station, a designated limited duty station. (Hend. Aff. at 2, 3) Henderson further states that:

> "to allow Florence to remain at Highland Hills and only do the sedentary portion of his job for four hours a day did not make good business sense. First, the sedentary portion of his regularly assigned job did not take four hours to do, second I had to assign another employee to do the carrying portion of the job. I felt it made better sense to send Florence to Northlake which was specifically set up to provide limited duty work to employees and to utilize a single employee at Highland Hills to carry Route 4151." (Id. at 4)

In his supplemental affidavit (filed with Defendant's Reply Memorandum) Henderson indicates that employees who were to be on limited duty status for a short period of time remained at the Highland Hills station. (Hend.Supp.Aff. at 2) Others whose recovery would be longer in duration could not remain because Highland Hills was not set up to handle limited duty employees on a long-term basis. He further indicates that he received a copy of Bonilla's August 7, 1987, doctor's statement indicating a minor injury and a good prognosis and thus did not transfer her to Northlake. (Id.) Plaintiff failed to establish a material fact issue as to the pretextual nature of Henderson's explanation for the transfer. With defendant's properly supported **Motion for Summary Judgment** on this issue, plaintiff must go beyond the pleadings and specify the evidence before the Court that shows a genuine issue exists requiring resolution at trial. *O'Neill*, 886 F.2d at 1443. Plaintiff has not done so. He attaches an affidavit to his response to the Motion for Summary Judgment of Sandy Bonilla which does not appear to comply with requirements for an affidavit or unsworn declaration. **(See Defendant's Reply Memorandum P. 3, 4, Footnote 3.)**

Even if the affidavit did constitute proper summary judgment evidence, it still does not raise a fact issue because Henderson allegedly said that he would "get rid of" limited duty because *Highland Hills did not have the necessary work for people on limited duty.* (emphasis added) He also points to his deposition testimony, however, his testimony also fails to establish a genuine issue of fact as to the pretextual nature of defendant's explanation for the transfer. In particular, when asked if he thought his supervisor Henderson discriminated against him because he was a black male, his answer was, "I can't honestly answer that because I don't know what he's thinking." He further indicated that Henderson had never said anything to this knowledge that would have led him to believe that he was discriminating against him because he was a black male. (Pl.Dep. at 64, 65) Plaintiff has thus failed to show that a fact issue exists as to the pretextual nature of defendant's explanation for the transfer. Because of this and his failure to raise a fact issue that he was treated differently from similarly situated individuals, summary judgment should issue on plaintiff's race and sex discrimination claims.

### Handicap Discrimination

Plaintiff's next complaint is that he was discriminated against on the basis of his handicap when he was transferred from Highland Hills to Northlake on August 19, 1987. Specifically, it is his contention that, although at the time he was assigned to Highland Hills that he could not perform all the duties required for the particular job upon which he had bid, that he should have been accommodated by the Postal Service and allowed to remain at that station. (Plaintiff's First Amended Original Petition, ¶ VIII) It is the defendant's position that summary judgment should issue on this claim in that plaintiff is not a "qualified" handicapped individual, such that he falls within the protection provided by the Rehabilitation Act of 1973. (29 U.S.C. § 791, *et. seq.*) Defendants further state that even if plaintiff did fall within the meaning of "qualified" handicapped employee, that he was at all times provided with work within his limitations and that is all that is required by the Rehabilitation Act.

To assert a claim of physical handicap discrimination, a plaintiff must first establish that he is handicapped as defined by the statute. *Jasany v. United States Postal Service,* 755 F.2d 1244, 1248 (6th Cir.1985); 29 U.S.C. § 706(7)(B)(i). Defendant does not dispute plaintiff's claim that he is handicapped. Assuming therefore that he is handicapped, plaintiff must next demonstrate that he was "an otherwise qualified handicapped individual." *Langon v. U.S. Department Health and Human Services,* 749 F.Supp. 1, 4 (D.D.C.1990), citing *Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979); *Prewitt v. United States Postal Service,* 662 F.2d 292, 309–10 (5th Cir.1981). If a plaintiff is not an otherwise qualified handicapped individual, there cannot be discrimination in violation of the Rehabilitation Act. *Id.* A "qualified handicapped person" is one "who, with or without reasonable accommodation can perform the essential functions of the position in question." *Jasany,* 755 F.2d at 1250, citing 29 C.F.R. § 1613.702(f). The employer is not required to accommodate a handicapped person by eliminating one of the essential functions of his job. *Id.,* cf. *Davis,* 442 U.S. at 413, 99 S.Ct. at 2370. *Wimbley v. Bolger,* 642 F.Supp. 481, 486 (W.D.Tenn. 1986); aff'd 831 F.2d 298 (6th Cir.1987). There is no requirement under the act to lower or effect substantial modifications of standards to accommodate a handicapped person. *Jasany,* 755 F.2d at 1250–51. If the plaintiff's handicap would prevent him from doing the job in question, he cannot be found to be "otherwise qualified". *Carty v. Carlin,* 623 F.Supp. 1181, 1186 (D.C.Md.1985) citing *Pushkin v. Regents and University of Colorado,* 658 F.2d 1372, 1387 (10th Cir.1981).

Applying the above principles to the instant case, I find that summary judgment must issue on plaintiff's claim of handicap discrimination. Specifically, plaintiff has failed to establish that there is

a fact issue in regard to whether he was a qualified handicapped person within the meaning of the Rehabilitation Act. The job at Highland Hills upon which plaintiff bid and was awarded was route 4151, a "park and loop" route. (Hend.Supp.Aff. at 3) The job required eight (8) hours, part of which included walking and carrying the mail. (Pl.Dep. at 204–205) At the time plaintiff was awarded the job he could only do four hours of work and in order to complete the job upon which he had bid, someone else would have had to do the other four hours. (Id. at 204–205) Even when plaintiff was released by his doctor from the pain management program and briefly sent back to Highland Hills and was allowed to carry mail for a portion of time, he was still unable to complete more than four hours of work. (Id. at 205–206) At this time he was also only able to carry mail about half the normal carrying time. (Id.) The job itself required approximately three hours in the office and five hours on the streets. (Id.) It is not possible to deliver route 4151 other than by walking the route carrying the mail and delivering same by hand. (Hend.Supp.Aff. at 3.) Nor was route 4151 a motorized route. (Id.) Plaintiff could not at any time after his injury do the whole job. (Pl.Dep. at 202) Essentially, for plaintiff to have held the job of route 4151, someone else would have had to do that work that he could not do. (Id. at 202, 203, 205) Alternatively, for plaintiff to have held the job, an essential function of it, walking and carrying the mail, would have to have been eliminated. As stated above, there is no such requirement under the Rehabilitation Act.

■■■ Plaintiff has offered no competent evidence to establish a fact question on this material issue. Rather, it is his position that because at the time he was awarded route 4151 and could only work four hours a day, he should have been accommodated for those four hours at Highland Hills instead of Northlake. However, as defendants point out in their reply memorandum, "So long as a reasonable accommodation is provided, an employee may not dictate the terms of what work he will or will not accept, citing *Carter v.*

*Bennett*, 651 F.Supp. 1299, 1301 (D.D.C.1987), aff'd 840 F.2d 63 (D.C.Cir. 1988). Plaintiff also makes mention in his response to the defendant's **Motion for Summary Judgment** that while he couldn't carry the mail, he could deliver the mail in a motorized vehicle and should have been so accommodated. However, he offers no competent evidence on this point. The defendant, on the other hand, in response to this contention, presents the supplemental affidavit of Clyde Henderson, which sets out that the only motorized route in the Highland Hills station is route 4101, a position held by an employee who acquired the route through the seniority process. Henderson stated that Article 41 of the collective bargaining agreement between the Postal Service and NALC, AFL–CIO would have been violated to have given plaintiff the motorized position. (Hend. Supp.Aff. at 3, 4; Ex. D, and Ex. E) An employer cannot be required to accommodate a handicapped employee by restructuring a job in a manner that would usurp the legitimate rights of other employees in a collective bargaining agreement. *Jasany*, 755 F.2d at 1251–52; *Hurst v. United States Postal Service*, 653 F.Supp. 259, 262 (N.D.Ga.1986). Moreover the motorized route is not the position for which he applied and a federal agency is under no obligation to transfer a handicapped employee from the job for which he is employed to some other position in order to provide him with work which he can perform. *Wimbley*, 642 F.Supp. at 486, citing *Carty v. Carlin*, 623 F.Supp. 1181, 1188–89 (D.Md.1985). The duty to reasonably accommodate only contemplates accommodation of a qualified handicapped employee's present position. *Black v. Frank*, 730 F.Supp. 1087, 1091 (S.D.Ala.1990.), citing *Carty v. Carlin*, 623 F.Supp. at 1188. Plaintiff was at all times given work within his limitations. (Pl.Dep. at 67.)

In sum, plaintiff has simply failed to raise a fact issue as to whether he was a "qualified" handicapped employee under the Rehabilitation Act. For this reason, the undersigned recommends that summary judgment issue on this claim.

## Contract Claim

In plaintiff's third and final claim, he alleges that the Postal Service breached the collective bargaining agreement in effect with the NALC by reassigning him to the Northlake station. For the reasons set out below, this claim is also subject to summary judgment.

■ Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 provides an employee with a federal cause of action against his employer for breach of a collective bargaining agreement. *Bache v. American Tel. & Tel.*, 840 F.2d 283, 287 (5th Cir.1988), citing *Smith v. Evening News Assoc.*, 371 U.S. 195, 83 S.Ct. 267. A claim against the Postal Service for violation of a collective bargaining agreement is properly brought pursuant to 39 U.S.C. § 1208(b), which is the Postal Services' analog to § 301 of the LMRA. *Elliott v. United States Postal Service*, 621 F.Supp. 1093, 1094, n. 1 (D.C.Mich. 1985). Section 301 precedent is applicable to Section 1208(b) cases. *Id.* As set our previously, plaintiff complained of his transfer by utilizing the grievance procedures which ultimately resulted in an arbitration decision against him. While arbitration is normally binding upon an employee-litigant (*See Del Costello v. Teamsters*, 462 U.S. 151, 163–64, 103 S.Ct. 2281, 2289–90, 76 L.Ed.2d 476 (1983), a plaintiff may proceed against an employer even after an arbitration ruling against him if he can establish that the union breached its duty of fair representation. *Hines v. Anchor Motor Freight Co.*, 424 U.S. 554, 567–571, 96 S.Ct. 1048, 1057–1059, 47 L.Ed.2d 231 (1976); see also *Landry v. Cooper-T. Smith Stevedoring Co.*, 880 F.2d 846, 850–51 (5th Cir.1989). There thus is an exception to the general rule that courts will not entertain challenges to an arbitral decision. However, to overcome the bar of finality, an employee must establish that his union's breach of its duty of fair representation "seriously undermine[d] the integrity of the [grievance process] process." *Id.* at 851 citing *Hines*, 424 U.S. at 567, 96 S.Ct. at 1057.

■ To determine whether the union has breached its duty of fair representation the Supreme Court has enunciated a standard to measure the union's conduct. "A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion." *Bache*, 840 F.2d at 290, citing *Humphrey v. Moore*, 375 U.S. 335, 349, 84 S.Ct. 363, 372, 11 L.Ed.2d 370 (1964). "A breach of the statutory duty of fair representation occurs only when the union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967); *O'Neill*, 886 F.2d at 1443–44. A breach of the duty of fair representation requires more than a showing of negligence or "honest, mistaken conduct." *Id.* at 1444 (citations omitted). "Carelessness or inadvertence neither constitutes or is evidence of" a breach of fair representation duty. *Id.* A union representative's responsibilities permit the exercise of judgment within a wide range of reasonableness, "subject always to complete good faith and honesty of purpose in the exercise of its discretion." *Hammons v. Adams*, 783 F.2d 597, 601 (5th Cir.1986). A union may not process a meritorious grievance in a perfunctory fashion. *Landry*, 880 F.2d at 852, citing *Vaca*, 386 U.S. at 191, 87 S.Ct. at 917. However, a union does not breach its duty when it processes an employee's grievance in a less than enthusiastic or imperfect manner. *Landry*, 880 F.2d at 852, citing *Connally v. Transcon Lines*, 583 F.2d 199, 202–203 (5th Cir.1978). The critical question is whether or not the union's conduct undermined the fairness or integrity of the grievance process. *Landry*, 880 F.2d at 852. Even proof that the underlying grievance was meritorious does not establish a breach of the duty of fair representation. *Bache*, 840 F.2d at 290. The relevant question in deciding fair representation is not whether the union's interpretation of an issue was correct, but rather whether it was non-arbitrary. *Tedford v. Peabody Cole Co.*, 533 F.2d 952, 957 (5th Cir.1976). "A union does not breach its duty of fair

representation by rejecting an employee's interpretation of a collective bargaining agreement unless the union's interpretation itself is arbitrary or unreasonable." *Bache,* 840 F.2d at 291.

Breach of the union's duty of fair representation is an essential element of the plaintiff's case. *Bache,* 840 F.2d at 287. Viewing the record evidence in the light most favorable to Florence, and assuming his evidence believable, *O'Neill,* 886 F.2d at 1443, he has failed to establish the existence of a factual dispute as to the union's fair representation.

■ Reviewing plaintiff's deposition testimony reveals that he has established nothing more but that the union failed to present his case to the arbitrator in the way that he, the plaintiff, thought correct and has wholly failed to show that the union's handling of his grievance was arbitrary, discriminatory, or in bad faith. Specifically, when asked whether or not he thought the union representative him in bad faith, he answered "No." (Pl.Dep. at 179) He further indicated that he was not claiming that the union discriminated against him. (Id. at 185, 186)

His specific claims that the union did not fairly represent him prior to arbitration center upon the union's failure to refer to Section 546.141 of the Employee Labor Relations Manual ("ELM") regarding the availability of work to disabled workers at their assigned stations and their failure to include an argument regarding overtime hours. (Id. at 85–89) However, he concedes that he had no reason to believe that the union representatives had any bad feelings toward him. (Id. at 93, 98, 99) He also agrees that it was only the issues regarding the ELM regulation and the overtime hours that the union left out of the prearbitration grievance procedures, (Id. at 89), and he later concedes that the arbitration witnesses did testify as to the availability of work at Highland Hills. (Id. at 150)

During the arbitration itself he complains that his union representative did not have adequate time to prepare (Id. at 119); failed to ask him more than five (5) of the forty-seven (47) questions plaintiff gave

him (Id. at 124, 125); failed to produce certain records that would have established available work at Highland Hills (Id. at 147, 148, 153); and failed to ask witnesses certain questions (Id. at 135). However, he concedes that his memory was not clear as to the specific questions that were asked of him during the arbitration (Id. at 125). In regard to his complaint that the unit did not ask him all the questions he desired, he specifically complains during arbitration of their failure to discuss article 546.141. (Id. at 139), which states that if there is adequate work at a disabled worker's station that he should not be removed. (Id. at 140–141). However, he agrees that the union told him that to ask certain of the questions he requested would "clutter" things up. (Id. at 144). He also concedes that they did present witnesses and argue to the arbitrator that work was available to him at Highland Hills. (Id. at 147, 150, 151). He agrees that the union argued to the arbitrator that there was work available at his station. (Id.) Conceding that the union did present evidence regarding available work, plaintiff complains that they did not **prove** that other work was available at Highland Hills (emphasis added). (Id. at 144) However, he offers little support as to how his requested arguments would have proven the availability of work at Highland Hills. (Id. at 145, 147) He does claim that certain records would have proven the availability of work, however, agreed that the records would have simply supplemented testimony already offered by the union. (Id. at 153–155) He further complains that an agreement regarding a certain witness should have been made part of the record by the union, however, he conceded that this agreement was made in front of the arbitrator who heard that the agreement being made. (Id. at 155, 156, 157) He complains about the union failing to argue regarding two (2) letter carriers on limited duty but then agreed that the union did, in fact, discuss these carriers and that the arbitrator's statement of the proceedings reflected that the union had made that argument. (Id. at 158, 164–65). He also agreed that he did not know the situation of those two (2) carriers on limited duty or whether their conditions provided no counter argument for the union. (Id.

167). He complained about a certain witness named Tolbert's testimony not reflecting that he was transferred to Northlake after plaintiff which would have somehow reflected that plaintiff was discriminated against, however, he did concede that Tolbert was a witness and testified that he was working at Highland Hills and was later transferred. (Id. at 169, 170). He complained that the Local Memorandum of Understanding which was not made part of the record would have reflected that jobs considered under limited duty are those that he was doing at Highland Hills. (Id. at 171) He agreed, however, that the Memorandum was simply an example of some of the duties he could have performed but said nothing about *where* he would have been performing these duties which was the subject of his grievance. (emphasis added) (Id. at 173.) Finally, he argues that the union should have raised an argument regarding the improper establishment of the Northlake station as a limited duty station. (Id. at 175.) The plaintiff did, however, indicate that he did not know whether the union had, in fact, agreed with management that Northlake would be properly set up as a limited duty station. (Id. at 177, 178.) Moreover, the president of his union submitted a declaration stating that no challenge by the union was made to the establishment of Northlake as a limited duty station because he, the president, believed that Northlake was preferable to night work in downtown Dallas and saw no basis for challenging the establishment of the station. (Defendant's **Motion for Summary Judgment, Attachment 5.**) This statement has not been challenged by the plaintiff.

In sum, plaintiff's complaints are essentially that the union did not present his case the way that he believed it should have been presented. Specifically, he complains that the paperwork he prepared was not presented. (Id. at 184) Further, his complaint that the union representative did not understand his case rests in part on the fact that the representative did not use the paperwork prepared by the plaintiff. (Id. at 184) He conceded that he had no facts to establish that the union representative did not want to win his case. (Id. at 185)

In short, there is nothing to show that the union representative represented him in bad faith or discriminatorily. (Id. at 179, 185–186)

Reviewing the union's actions in plaintiff's behalf from the handling of his grievance procedures through arbitration does not reflect any arbitrary, discriminatory or bad faith handling of his case. The union accepted his grievance and handled it through all the steps of the grievance process. (Id. at 85, Dep.Ex. 12) Plaintiff stated that he never had a disagreement with his union representative's handling of his grievance prior to arbitration. (Id. at 92–93) His union representative, Robert Hinson, handling his arbitration, called him the day before arbitration and told him George White would be handling the case. (Id. at 96, 98) Mr. Hinson did come to the arbitration. (Id. at 101) White read over some of plaintiff's witness statements and indicated to him that Hinson had briefed him on the case. (Id. at 102) Prior to the hearing, Hinson had told plaintiff what he should bring to the hearing and they also discussed additional material and witnesses that might be helpful to the case. (Id. at 98–111) White reviewed plaintiff's questions and used some of his questions in his presentation. (Id. at 101, 102, 121, 123, 180, 183, 226, 227) The representative presented witnesses supporting plaintiff's theory of the case. (Id. at 150, 154–55)

Assuming that the union representative representing plaintiff during his arbitration was not as well prepared as plaintiff desired, as stated above, the processing of an employee's grievance in a less than enthusiastic or imperfect manner does not constitute a breach of the duty of fair representation. *Landry*, 880 F.2d at 852. Moreover, there is nothing, viewing the facts in the light most favorable to the plaintiff, that indicates the union's conduct undermined the fairness or integrity of the grievance process. It is not the adequacy of the representation but the good faith in which it was undertaken which is at issue in a fair representation case. *Bell v. Mercury Freight Lines, Inc.*, 388 F.Supp. 1, 3 (S.D.Tex.1975). "Plaintiff's brief indicates, at worst, plaintiff was unskillfully represented, not that anyone consciously tried to

prejudice the proceedings." *Id.* at 3. "... This Court cannot and should not attempt to oversee the adequacy of union representation by judging with hindsight tactics used at a grievance hearing." *Id.* That Florence believes that some of the union's handling of his case was slipshod or incorrect does not entitle him to relief. There is simply nothing in the record evidence that indicates anything other than, at most, a negligent and perhaps less than skillful effort on the part of the union. There is nothing, nor does plaintiff in his deposition testimony point to anything, which shows an arbitrary, discriminatory, or bad faith effort by the union in his behalf. Plaintiff has thus failed to make a sufficient showing to establish the existence of an essential element of his case, to wit, breach of the union's duty of fair representation. For this reason, I recommend that summary judgment issue as to plaintiff's contract against the Postal Service.

### CONCLUSION

For the above reasons the undersigned recommends that the District Court grant summary judgment and dismiss this case.